## LEWIS D. GREEN *vs.* THE STATE OF MARYLAND.

*Criminal Law—Admissibility in Evidence of a Confession.*

Held upon the facts of this case that a confession of murder made by the accused was his voluntary act, uninfluenced by threats or promises, and was therefore admissible in evidence upon his trial.

An objection to the admission in evidence of a confession of guilt made by the prisoner on the ground that at the time of making it he was not in full possession of his mental faculties, having attempted to commit

suicide after killing his mistress, is properly overruled when the medical
testimony in the case shows that on the day the confession was made
he had recovered from the shock of his wound and that his mental con-
dition was normal.

A witness testifying to a confession made by the prisoner is not required
to repeat the exact words used, but it is sufficient if he states the sub-
stance of what was said.

Appeal from the Circuit Court for Talbot County (PEARCE,
C. J., MARTIN and BROWN, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*Joseph B. Seth*, for the appellant.

*Isidor Rayner, Attorney-General*, for the appellee, submitted
the case on his brief.

JONES, J., delivered the opinion of the Court.

The appellant was indicted in the Circuit Court for Talbot
County on a charge of murder and upon trial was convicted
of murder in the first degree.   He received the sentence of the
Court on the 7th day of June, 1902, and brings this appeal
from that judgment.   The questions upon this appeal are pre-
sented by exceptions to evidence admitted by the trial Court
against objection made on his behalf.   The victim of the homi-
cide was a woman and the killing was done by shooting with
a pistol.   After using the pistol with fatal effect upon his vic-
tim, he turned the weapon upon himself, presumably with
suicidal intent.   He was found to have shot himself through
the right ear—the bullet passing through the bone and on
down through the throat, as described by a physician who saw
him ; and also in the chest over the heart—this bullet passing
under the muscles and lodging under the big muscles of the
arm.   Immediately after the shooting he was found to be suf-
fering greatly from shock and was unconscious.   It was soon
discovered however that the wounds which he thus inflicted
upon himself, after their immediate effects had subsided, were

not dangerous. Within two days after the shooting the appellant made certain confessions or statements to an attending physician in the presence of a Justice of the Peace, who took the same down, as to his having done the killing for which he was afterwards indicted and convicted and as to his motive therefor. These confessions or statements were admitted as evidence against the appellant upon his trial by the Court below which overruled objections thereto made by his counsel ; and are the subject of the exceptions brought up by the record.

The questions presented upon the exceptions are matters of grave import to the appellant, but as respects the disposition the Court must make of them are free from difficulty. The rules of law that must determine these questions would seem to be too well settled by our own decisions to make necessary any reference to other authorities. The confessions of the accused, especially in capital cases as this was, are always to be received with caution. The law imposes the condition, upon the admitting of them in evidence, that they be not induced by threats or by promise of advantage to be derived from making them ; and the burden of showing affirmatively that they were not so induced to be made in any given case is upon the prosecutor. *Nicholson* v. *State*, 38 Md. 140. The confession which was objected to by the prisoner's counsel and admitted by the Court, as deposed to by Wm. E. Hollyday, a Justice of the Peace who took the same down, appears in the record as follows: "February 6th, 1902. I examined him, I asked him why he shot Carrie Price. He said 'I shot her because she wouldn't' do as I wanted her to do, and cursed me and called me a damn liar. Then I asked her to get me my things, and I would leave, and Carrie Price said I knew where my things were and I could get them myself ; that she was not going to get them, then she left the house. I went after her and asked her to go home, and she said she was not going home, she would go up town and get an officer and have some peace, then I went to the house and got my pistol.' I asked him what did he do then. He answered,

'Carrie Price had $12 of my money and Lewis asked Carrie for my (his) money.' " Q. Did she give it to you ? A. Yes, sir. Q. What did you do then ? A. I fired on her two or three times, I don't know which, and once after she fell. Q. What house was Carrie at? A. Gussie Wheatley's. Q. How came you to take the pistol with you ? A. I went and got it on purpose to shoot her with. Q. What did you shoot Carrie for ? A. Well, I was going with her and she would go with other men, that was the cause I shot her. Q. Was she your wife? A. No, sir ; but I thought she shouldn't go with other men. The subscriber wrote this while Lewis Green was stating it."

Before offering this confession in evidence the State questioned the witness Hollyday as follows, after proving that he was a Justice of the Peace and that he went to where the prisoner was. "Q. Did he make any statement to you about the shooting ? A. Yes, sir. Q. Just tell the Court whether it was freely and voluntarily made on his part. A. It was. Q. Were any threats made against him or any inducements held out to him to make a statement ? A. None at all. Q. Who requested him to make a statement ? A. No one at all." Then upon cross-examination this witness was asked : "Q. Did you take his statement at his request ? A. I asked him if he was willing to give a statement and he said 'yes,' and I asked him to give the cause of the shooting. He said he had a cause. That is the only cause he gave me. Q. Did you tell him he better tell ? A. No, sir. Q. You didn't ask him to tell ? A. No, sir, I told him he was not required to incriminate himself." Upon further examination by the State he said: "He did freely and voluntarily make it (the statement) himself. I was merely asking him and he made it ;" and further said that he did not offer the prisoner anything ; nor promise him anything ; nor tell him it would be better for him if he would confess. In all this he was confirmed in a negative way by Dr. Eckels, the attending physician, who testified to being present and that he did not hear anything in the way of threat or inducement ; and that he did

not himself "tell him that he (the accused) ought to confess or advise him to confess."

It was to the admission of this confession that the first exception was taken on behalf of the accused (the appellant). There was no error in the ruling of the Court upon this exception.   The foundation laid by the State in its preliminary inquiries was quite sufficient to justify the admission of the confession.   The confession admitted, and which action was approved by this Court, in the case of *Ross* v. *State*, 67 Md. 286, was made under circumstances much more likely to subject the accused to pressure than any appearing here.

The second exception of the appellant was taken to the admission of the evidence of the witness Dawson, who testified that he was a constable ; that he was present when the appellant made to the witness, Hollyday, the statement which has been set out in connection with the testimony of that witness ; that the statement by the appellant was made voluntarily ; that there were no threats made, nor "inducements or promises held out to him to make a statement ;" and that he "was with Mr. Hollyday the whole tiime ;" they "went together ;" and was then asked, after being questioned on the part of the appellant as to the appellant's condition ; and as to whether the appellant knew that the witness was a constable, and that the witness Hollyday, was a Justice of the Peace and, answering these two last inquiries affirmatively, to tell as near as he could what the appellant said in making his statement to the witness, Hollyday.   The ground upon which the objection to this testimony was put was "because of the physical and mental condition as shown by Dr. Eckels," of the appellant at the time of the confession.   Assuming this to be a legal ground of objection, if the basis of fact assumed, existed.   Dr. Eckels' testimony as to the mental and physical condition of the appellant was to the effect that though he found him suffering greatly from shock when he first was called to him on the day of the shooting, which was the 4th of February, 1902, and that he was then unconscious, that later in the day he saw the appellant again when his condition was im-

proved and he had recovered somewhat from the shock and was "partially" conscious ; that the next morning he had recovered from the shock and was conscious ; and that on the 6th, the day the confession or statement was made by him his "condition" of "mind was all right ;" that his general condition was very much improved ; that he "talked very intelligently as an intelligent·man would talk in normal mind ;" and that he answered all questions promptly and intelligently. With this testimony before the jury there was no reason for withholding the statement from them on account of the physical and mental condition of the appellant at the time it was made. He was shown to be fully capable of making an intelligent statement.

The objection having been overruled and the evidence admitted, the witness testified : "Squire Hollyday asked him in regard to it, he said he shot her. He asked him what for. In the first place he said he had a reason or something that way. He went on and said that he couldn't live with her and no one else should, he wouldn't let any one else ; that was about the amount of it." Upon further questioning he said in substance that he had given all he could recollect of what was said. Asked to state the exact language of the appellant he answered—"that is about the substance of it ; I couldn't go over it word for word for the life. of me." At this point the counsel for the appellant moved the Court "to strike out the testimony of this witness on the ground that he didn't state anything but the impressions as he gained them from the language, and did not give the language." The Court overruled this motion and this action of the Court is the ground of the third and. last exception of the appellant. In this the Court was clearly right. It was not necessary that the witness should be able to repeat the exact language used in order to testify. He did not give mere impressions, but gave the substance of what was said as far as he could recollect it—and this was sufficient, *Worthington* v. *State*, 92 Md. 222. A comparison of what this witness said with the statement taken down by the witness, Hollyday, will show that

there is no divergence from that statement by the witness in substantial effect as far as the recollection of the witness allowed him to go.

Finding no error in any of the rulings of the Court brought up by the exceptions, the judgment will be affirmed.

*Judgment affirmed with costs.*

(Decided January 21st, 1903.)