EDWARDS *v.* STATE
(Two Appeals in One Record)
[No. 75, October Term, 1949.]

388

390

*Decided February 8, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*William J. McWilliams* and *Ridgely. P. Melvin, Jr.*, for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* and *Anselm Sodaro, Assistant State's Attorney for Baltimore City,* with whom were *Hall Hammond, Attorney General, J. Bernard Wells, State's Attorney for Baltimore City,* and *James C. Morton, Jr., State's Attorney for Anne Arundel County,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

The appellant, Thomas Alexander Edwards was indicted, on two separate indictments, for the murders of John L. Mahlan and Mary Kline on September 17th, 1948, in Anne Arundel County, Maryland. The cases were removed to Baltimore City. To both indictments he pleaded not guilty and elected to be tried by the court without a jury. He was found guilty in both cases of murder in the first degree and, after motions for new trials were overruled, was sentenced to death by hanging. From those judgments appellant has appealed to this Court.

Appellant contends primarily that it was error for the trial court not to have excluded from the evidence the confession. Appellant offers several contentions why the confession should have been excluded.

It is contended that the detention of the appellant in custody without a warrant, and without ever having been taken before a magistrate, was illegal and constituted a denial of due process under the due process clause of the Fourteenth Amendment of the Federal Constitution. He cites as authority, among other cases:

*Malinski v. People of State of New York*, 324 U. S. 401, 65 S. Ct. 781, 89 L. Ed. 1029; *Watts v. State of Indiana*, 338 U. S. 49, 69 S. Ct. 1347; *Turner v. State of Pennsylvania*, 338 U. S. 62, 69 S. Ct. 1352; *Harris v. State of South Carolina*, 338 U. S. 68, 69 S. Ct. 1354. Edwards was first taken into custody on October 9th, 1948 when he was brought by the Anne Arundel County police to their headquarters at Ferndale in Anne Arundel County for questioning. No charge was placed against him at that time. He was put in a cell where he spent the night. On October 10th he was again questioned and taken to his home where an unexpended cartridge was found. He was returned to Ferndale and kept in custody that night. On October 11th he was taken from Ferndale to Baltimore. The purpose of that trip was an attempt to locate a man to whom appellant claimed he had sold his gun. He was returned to Ferndale at about 1:00 P.M. and detained that night. He was questioned the next day and released about 6:00 P.M. He was again taken into custody on November 8th, 1948, and taken to the Waterloo State Police Barracks in Anne Arundel County, where he was questioned and where he then told the officers exactly where his gun could be found. He was detained in custody at the Waterloo State Police Barracks and questioned until 7:15 P.M. on November 10th, when he was turned over to Chief Souers of the Anne Arundel County Police Department and thereupon taken by him to the Ferndale Police Station. Upon arrival there he was served with warrants charging him with the murders. He was questioned from 9:15 P. M. to 10:30 P. M. that evening. On November 11th, 1948, at about 5:25 A.M. he was taken from the Ferndale Police Station to Baltimore Detective Headquarters. At 11:30 A.M. that morning he was taken from his cell by Captain Kriss and questioned and made the confession at 2:25 P.M.

We are of opinion that the facts in this case do not show such unlawful detention to constitute denial of due process under the Fourteenth Amendment of the Con-

stitution of the United States. We have discussed this principle of law and most of the cases cited, in detail in the recent cases of *Cox v. State,* 192 Md. 525, 64 A. 2d 732, decided March 10th, 1949; *James v. State,* 193 Md. 31, 65 A. 2d 888, decided April 27, 1949; *Grear v. State,* 194 Md. 335, 71 A. 2d 24. We do not deem it necessary to rediscuss that principle here.

Appellant claims that while at the Waterloo Station he was told he "was not at Ferndale now." This apparently is not specifically contradicted. The appellant also claims that while he was at Waterloo Station one of the officers "had a rope from a string of lights, he kept on rolling like a slip knot to go on your neck, and I am watching him all the time." This fact is not specifically denied. The appellant also testified that while he was at Waterloo the officers told him the reason they brought him up there was for his own protection to "keep the people from Glen Burnie from lynching you." This statement is absolutely denied by the officers. Appellant also contends that while he was being questioned by Captain Kriss in Baltimore and before he made his alleged confession that Captain Kriss said to him: "If you don't say nothing we will send you back to Ferndale, * * * then I said I don't want any parts of Ferndale. * * *" He further stated that Captain Kriss said: "If you tell me what I want to know I will see you don't go to Ferndale." Captain Kriss denied that he ever made such a statement or threatened to send him back to Ferndale or promised to keep him in Baltimore City. Captain Kriss does admit that appellant said "he didn't want any Waterloo police or any Ferndale police." Where an attempt is made to offer a confession in evidence, and the accused says that the confession made by him was not obtained voluntarily but because of some threats or persuasions, it is then the duty of the trial court to determine whether the testimony of the accused or the testimony of the officers, who testified that no such threats or persuasions were made, is to be given the greater weight. This determination depends upon

whether the State has met the burden of proof of establishing that the confession was freely and voluntarily made. We agree that the trial court in view of the denials by the officers, was justified in holding that the confession was not obtained because of threats made by the officers that the appellant would be returned to Ferndale and possibly lynched. *McCleary v. State,* 122 Md. 394, 410, 89 A. 100; *Demby v. State,* 187 Md. 7, 48 A. 2d 586, 590; *Jones v. State,* 188 Md. 263, 52 A. 2d 484, 487.

During the time Captain Kriss was questioning the appellant, between the hours of 11:30 A.M. and 1:25 P.M. on November 11, 1948, Captain Kriss told the appellant, among other things, just before the alleged confession was made, "I was equally concerned as the people who were aroused, and if he had any knowledge I would like to hear from him. He said his father told him that morning to tell the truth. I said, well, why don't you tell the truth. At about that time the sandwiches came in for his lunch, and he ate the two large sandwiches, and had a bottle of Coca-cola. There was a third sandwich there, and he didn't care for it. I spoke to him again about his mother. Did your mother talk with you recently? He said, yes, she was at Waterloo yesterday. What does she say? She told me to tell the truth. Why don't you tell the truth? He said well, Captain, if I tell this story I am going to tell the whole story and I said to him, if you tell a story I only want the whole story, I don't want it half, I want it either all or none." Appellant then asked Captain Kriss to call his father on the telephone. This was done and appellant was taken to his cell. The father came to Captain Kriss' office. Appellant was brought in and beginning about 2:30 P.M. made the confession to Captain Kriss in the presence of his father and Mrs. Batt, the stenographer. Mrs. Batt started taking notes at 2:30 P.M. and finished about 3:12 P.M. The notes were transcribed by Mrs. Batt by 4:50 P.M. and the con-

fession signed by appellant five minutes later, with his father as a witness.

When Edwards took the stand to testify as to the admissibility of the confession, and after Captain Kriss had apparently testified in full as to its admissibility, Edwards said that Captain Kriss had left out a lot of what they had talked about. Edwards testified that "Then he (Captain Kriss) keep talking, he goes in the drawer, pulls out a drawer, there is a letter in there. * * * He said yes, there is a letter I would not take a thousand dollars for. * * * So he started to read it, and after he read it to me the way it looked to me it had some kind of stuff in there about some guy was smart and the cops had him and he didn't want to talk. * * * Then he goes down, the guy winds up and goes to the Penitentiary, and writes a letter back to him to tell him if he ever gets another smart guy like me to show him the letter. * * * So he hands me the letter and I read it." Captain Kriss later admitted that he showed appellant this letter. He said: "The letter is a letter sent to me from an inmate of the Maryland Penitentiary outlining that he was sorry he didn't listen to me. * * * Edwards paid me a compliment by saying, you are a square cop, and I believe you are fair, and I said to him, coincidentally, I have got a letter here that I received some time back from a person who is now in prison. You want to read it? and I showed it to him." This letter offered in evidence follows:

June 21st, 1946

"Captain Henry Kriss:—

"Here it is Captain, you ask me to drop you a line, and tell you that you were right. You were Captain, thank you for being so patient.

"It's over now as far as I'm concerned so I thought I'd get this over with. Because next week, next year won't change it any, the time I get won't matter either.

"You know it's really a laugh Captain how a person, who has been around as much as I could be so wrong, on everything. All my life it's been the 'cop' who was

wrong. I know now that was true, I made the fatal mistake of not knowing a right cop when I saw one.

"Yes. I have a Lawyer, also have the money 'I guess, if he hasn't' well, maybe you can tell me what good either are. Don't bother Captain I know *now*.

"Next time you get a smart guy who *knows,* show him this letter, from another wise guy. And don't forget to tell him what it cost me for not listening to you.

"Thank you for all you tried to do. Your a square cop, that's a compliment coming from me. Lots of luck Captain.

"Sincerely,
"Paul Downey.

"P. S. While I'm at it I enclose my apology to Lt F. Schmidt."

The appellant contends that the statements made by Captain Kriss to the appellant urging him to tell the truth and this letter constituted in fact a statement to the appellant by the officer that it would be better for appellant to tell the truth, and was such an inducement as to make the confession involuntary on the part of the appellant and therefore inadmissible. It is evident that this letter made some impression on Edwards because although Captain Kriss did not at first testify that he showed this letter to Edwards, the appellant distinctly remembered it when he testified.

It was said by this Court in the case of *McCleary v. State,* 122 Md. 394, at page 399, 89 A. 1100, at page 1102, *supra,* "At the outset it is to be observed that the burden of showing that a confession of crime had not been obtained by improper means, that it is the voluntary act, uninduced by hope of favor or fear of harm, is one which the law casts upon the state. (*Nicholson v. State,* 38 Md. 140; *Green v. State,* 96 Md. 384, 54 A. 104; *Bram v. United States,* 168 U. S. [532], 571, 18 S. Ct. 183, 42 L. Ed. 568; *Watts v. State,* 99 Md. 30, 57 A. 542; *Toomer v. State,* 112 Md. [285] 292, 76 A. 118) ; and where this obligation is not satisfactorily met, it is improper to admit the confession."

In the case of *Biscoe* v. *State,* 67 Md. 6, 8 A. 571, the prisoner, who was in custody of the law, although pressed often to make a confession persisted in denying his guilt. It was not until he was told by Morgan, the committing magistrate, "that it would be better for him to tell the truth, and have no more trouble about it," that the confession was made. In holding that confession inadmissible Judge Robinson, speaking for this Court reviewed the following English cases: *Baldry's Case,* 2 Den. C. C. 430; *Reg. v. Garnier,* 2 Carr. & K. 920; *Rex v. Kingston,* 4 C. & P. 387; *Rex v. Partridge,* 7 C. & P. 557. He says in that case 67 Md. at pages 9 and 10, 8 A. at page 572: "The whole question was fully considered in the latter case of [Reg. v.] Baldry, 2 Denison, Cr. Cas. 430, by Lord Campbell, C. J., Pollock, C. B., Parke, B., and Erle and Williams, JJ. Pollock, C. B., said: 'A simple caution to the accused to tell the truth, if he says anything, * * * the statement may be given in evidence, but, where, the admonition to speak the truth has been coupled with an expression importing that it would be better for him to do so, it has been held that the confession was not receivable, the objectionable words being that it would be better to speak the truth, because they import that it would be better for him to say something.' "

In the case of *Watts v. State,* 99 Md. 30, 57 A. 542, 544, the accused was indicted for the murder of his wife and while in jail in the presence of the deputy sheriff and the jail warden he was told by a newspaper reporter that he need not say anything unless he desired. The newspaper reporter however told him "it would be possibly better for him if he would make a clean statement, so it would not appear erroneously in the papers; that the papers would get it anyway, and, as my paper was an evening paper the correct statement would come out first." This Court did not hesitate in that case to hold that a confession thus obtained was not admissible. This case is very similar to the one at bar.

In the recent case of *Lubinski v. State,* 180 Md. 1, 22 A. 2d 455, 457, appellant claimed that in obtaining a con-

fession the police officer said to him: "Stanley, whatever you say to me will be used against you in court." The appellant then said that he asked the officer whether it was necessary for him to make a statement and that the officer replied: "No, but it will help you a lot." The officer denied that he ever told appellant that it would help him a lot if he made a statement. On that conflict of testimony the Court permitted the statement to be admitted in evidence. This Court through Judge Marbury said in that case, 180 Md. at page 5, 22 A. 2d 458: "In this case it is the appellant's word against the word of one officer, although the latter is later corroborated by detective Tarr, who was present. If the appellant's statement were uncontradicted, we believe that the confession should not have been admitted."

From the authorities it is evident that it is settled law in this State that the burden is upon the State to show that a confession is freely and voluntarily made before it can be admitted in evidence. It is also settled law in this State that if the accused is told it would be better for him to tell the truth, such a statement constitutes such an inducement as to make the confession involuntary and inadmissible. In the case at bar Captain Kriss admits that he urged the appellant just before the confession was made to tell the truth. He also admits that he showed to the appellant this letter purporting to have been written to Captain Kriss by an inmate of the Maryland Penitentiary in which the writer forcefully admits that he made a mistake in not listening to the officer. The statement in the above letter "Next time you get a smart guy who *knows,* show him this letter, from another wise guy and don't forget to tell him what it cost me for not listening to you," was clearly a recommendation to do what the officer told him to do, that is, in this case, to tell the truth. Instead of Captain Kriss telling the appellant that it would be better for him to tell the truth, this statement was made to the appellant through a third party who had been in custody and who had refused to do what the officer wanted him to do.

This was exactly the situation of Edwards when this letter was shown to him. We are of opinion that under the settled law of this State the exhortation by Captain Kriss to the appellant to tell the truth, supported by the letter shown the appellant by Captain Kriss, which amounted in effect to a recommendation that it was better for a person accused of a crime to do what the officers told him to do, constituted such an inducement as to make this confession inadmissible.

Sergeant James H. Butler testified that at about 6:00 P.M. on November 11, 1948, the same day the confession was made to Captain Kriss, Edwards asked for some water which he gave him, and while standing at the cell door Edwards told him how he committed the murders. The statement made to Butler contained many things told Captain Kriss.

About 7:00 A.M., the next day, November 12th, Captain Kriss asked Edwards to explain certain roads connected with the alleged crimes. Edwards took a pencil and drew "a form of map." At about 11:00 A.M. that morning he was taken from the cell and met Chief Souers and Mr. Morton, the State's Attorney for Anne Arundel County. Captain Kriss again read to Edwards the statement he had made to him the preceding day and Edwards, in the presence of Mr. Morton and Chief Souers, acknowledged it to be his statement witnessed by his father. Shortly thereafter Edwards, Captain Kriss, Chief Souers, Mr. Morton and the stenographer, Mrs. Batt, left Baltimore in an automobile driven by chauffeur French, and on that trip all of the questions propounded and answers thereto were taken down by the stenographer, Mrs. Batt. The party went from Annapolis to Ferndale and from there retraced the route which Edwards said he had taken the night of the alleged murders. At the trial of the case this transcript made by Mrs. Batt was offered by the State and Mr. McWilliams, one of the attorneys for the defendant, said that he made no objection as to the admissibility of this statement but that the attorneys for the defendant would

have a great deal to say about its weight. This transcript made by Mrs. Batt was then admitted in evidence and read to the court.

The appellee claims that as there was no objection to the introduction of the statement made by the accused to Butler, and as the transcript made by Mrs. Batt was admitted without objection by the defendant, the admissibility of the Butler statement and the Batt transcript is not before this Court on appeal. With this contention of the appellee we do not agree. Under the facts of this case the statements made to Captain Kriss, to Butler, and the transcript made by Mrs. Batt, were all one confession. The statement to Butler and the statement transcribed by Mrs. Batt were just an echo of what had been told to Captain Kriss and were not as harmful to the appellant as the first confession. These later confessions did not add to the confession made to Captain Kriss. When the first confession had been admitted against the objection of the appellant, naturally the attorneys for the defendant wanted the second and third statement to become a part of the first statement, to which objection of admissibility had been made. All these statements are inseparable as one alleged confession and for the same reason that the alleged confession to Captain Kriss should not have been admitted, the Butler statement and the Batt transcript are likewise inadmissible. Where one confession is held to be involuntary and inadmissible a presumption exists that any subsequent confession was made by reason of the prior influence, and this presumption must be overcome by the State before a subsequent confession can be offered. The improper influence which produced the first confession is presumed to be still in effect until a cessation of that influence is definitely shown, and the evidence to overcome and rebut such a presumption must be clear, strong, and satisfactory, and any doubt on this point is resolved in favor of the accused. Vol. 22, Corpus Juris Secundum, Criminal Law, § 835, p. 1460; Wharton's Criminal Evidence, Vol. 2, Sec. 601, p. 998; Underhill

On Criminal Evidence, Sec. 266, p. 521; *Redd v. State,* 69 Ala. 255; *Ballard v. State,* 225 Ala. 202, 142 So. 668; *Andrews v. People,* 33 Colo. 193, 79 P. 1031, 108 Am. St. Rep. 76; *State v. Fisher,* 51 N. C. 478; *State v. Howard,* 17 N. H. 171; *Coffee v. State,* 25 Fla. 501, 6 So. 493, 23 Am. St. Rep. 525; *Whitten v. State,* 86 Fla. 111, 97 So. 496; *People v. Sweetin,* 325 Ill. 245, 156 N. E. 354. There is nothing in this case to show that the inducement offered by Captain Kriss, that it would be better for the accused to tell the truth, did not continue through the time that Edwards made the two subsequent statements.

The alleged murders in this case having been committed on September 17, 1948, the bodies of the two deceased persons were found on September 20, 1948, by a county road worker in a clearing about 175 feet from the Chesterfield road, near its intersection with the Defense Highway. A crowd soon gathered and an intensive search was made by the police of the clearing where the bodies were found. Nothing was located at that time except a button from Mary Kline's dress. Many sightseers visited this location. On Sunday September 26th a Mr. Phelps took his wife and children to view the spot. He stated that near the place where the bodies were found he saw a lot of raw cotton. He took a piece of cotton from the ground and found half-buried under maggots and raw cotton a shiny empty cartridge casing. Testimony was offered to show that this casing was handed by Mr. Phelps to a Mrs. Wade who saw him pick it up. Mrs. Wade testified that she saw Mr. Phelps pick up the cartridge casing and he handed it to her. She gave it to her husband immediately. Mr. Wade testified that his wife had given him the casing and that he took it to the Ferndale Police Station and delivered it to Chief Souers that afternoon. Chief Souers testified that Mr. Wade handed the cartridge casing (the Wade cartridge casing) to him and that he placed it in a small marked envelope and locked it in a safe. He said that the next day he took the envelope with the Wade casing

in it from his safe and delivered it with three unexpended cartridges to Officer Praley, with instructions to take the Wade cartridge casing and the three unexpended cartridges to the Federal Bureau of Investigation (F. B. I.) in Washington. Members of the Anne Arundel County Police Force testified that this Wade cartridge was delivered to the F. B. I. in Washington. Officer Frazier of that organization testified that he fired test cartridges from the gun, identified as belonging to the appellant, and compared them under the comparison microscope with the Wade cartridge casing and reached a conclusion that the Wade casing was fired from appellant's gun. At the trial of the case Chief Souers identified this cartridge casing by the stamp "Z9" on the bottom and as being a .380 caliber of foreign make and said the cartridge casing offered in evidence looked like the casing he had sent the F. B. I. Appellant contends that as all cartridges of this type are stamped "Z9" this was not sufficient identification.

The appellant contends that there is not sufficient identification to show that the cartridge casing found by Mr. Phelps, the Wade cartridge casing, was the same casing as the one the State offered in evidence. With this contention of the appellant we do not agree. The State traced the casing to the F. B. I. If this cartridge casing which was picked up nine days after the alleged murders, had not been identified as having been fired from Edwards' gun it would not be admissible. Here, however, the F. B. I. identifies the cartridge casing offered in evidence as having been fired from defendant's gun. We think it was admissible. Implements of crime are admissible in evidence if they are so connected with the crime or the accused as to throw light upon a material inquiry in the case. On the question of admissibility of evidence, which is the only question before us here, probability is the only requirement. The weight of such evidence is a question for the jury or for the court sitting as a jury. *Goldstein v. State (Bevans v. State)*, 179 Md. 697, 22 A. 2d 471; *Shanks v. State*, 185 Md. 437,

443, 444, 45 A. 2d 85, 163 A. L. R. 931; *Corens v. State,*
185 Md. 561, 572, 45 A. 2d 340; *Cox v. State,* 192 Md. 525,
64 A. 2d 732, 738, supra.

As we find that the alleged confessions of the appellant should not have been admitted in evidence the judgments will be reversed and the cases remanded for new trials.

*Judgments reversed and cases remanded
for new trials, without costs.*