468 A.2d 698

**Dallas Henry DAVIS, Jr.**

v.

**STATE of Maryland.**

**No. 293, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Dec. 16, 1983.

Louis P. Willemin, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender, on brief, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Andrew L. Sonner, State's

Atty. for Montgomery County and Robert Dean, Asst. State's Atty. for Montgomery County, on brief, for appellee.

Argued before MOYLAN, WILNER and GETTY, JJ.

MOYLAN, Judge.

The appellant, Dallas Henry Davis, Jr., was convicted by a Montgomery County jury, presided over by Judge William M. Cave, of armed robbery and related offenses. Upon this appeal, he raises one contention going to the merits of his convictions:

    (1) That an incriminating statement was erroneously admitted in evidence.

He also raises two contentions challenging the imposition of an enhanced sentence as a fourth offender under Art. 27, § 643B(b):

    (2) That he did not receive adequate notice that the State intended to proceed against him as a fourth offender; and

    (3) That the evidence was not legally sufficient in several respects to sustain the finding that he was indeed a fourth offender.

## The Admissibility of the Statement

The appellant gave an incriminating statement to the Montgomery County police. He does not claim that he was not given his fair warnings under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or that his treatment was improper in any other respect, so as to make that statement itself directly involuntary. He seeks to establish rather a tenuous chain of cause and effect tracing back to his earlier arrest for a Charles County robbery by the State Police and his subsequent questioning at the hands of Prince George's County police. Our holding that the incriminating statement to the Montgomery County authorities was properly admitted into evidence is, in the last analysis, the product of a practical and common-sense overview. We decline to follow the appellant through every

labyrinthine corridor of strained logic and hypertechnical argument. Some brief background is necessary.

The appellant "pulled" an armed robbery in Charles County during the early morning hours of January 26, 1982. He was observed in the getaway car moving from Charles County into Prince George's County. He was ultimately caught after a chase by the Maryland State Police. He abandoned the car in Prince George's County and fled on foot for about ten minutes before being apprehended by the State Police. He was taken to the Maryland State Police barracks in Forrestville for processing. Before being returned to the Sheriff's Department for Charles County, he was taken to the Bureau of Criminal Investigation, Robbery Division, in Prince George's County. He was there questioned by a Sergeant Krouse of Prince George's County with respect to any robberies which he had perpetrated in Prince George's County. He gave a statement concerning a robbery in Prince George's County. According to the appellant's testimony, the following exchange occurred right after the appellant gave that statement relating to the specific Prince George's County crime:

"He asked me something about Charles County and everything, he said, 'Well, we know we've got you for that already, so it's best for you to come clean on the rest of them, you know, just clear the books, and it might come easier for you in the long run.'

Q: And did you make a statement about a Montgomery County robbery?

A: I thought about it, and at the time he said, 'Well, if you remember anything about something happening in Frederick, Anne Arundel, all the counties in the State of Maryland, it'd be helpful for you in the long run, why don't you clear their books, too?'

So, I got to thinking about Rockville and I'm trying to remember did I commit a crime there, and I think I did make a statement, something about Montgomery County."

Taking off from that exchange, the appellant moves on to *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979), and its holding that a statement will be deemed involuntary if "an accused is told, or it is implied, that making an inculpatory statement will be to his advantage." *Id.* at 286 Md. 153, 406 A.2d 415. Although the appellant himself was the only source for his version of the interrogation session, he relies upon *Streams v. State,* 238 Md. 278, 208 A.2d 614 (1965), for the proposition that his testimony as to this inducement must be accepted as true if the State fails to rebut it specifically.

In terms of direct cause and effect, the issue as to this vague and ambiguous conversation is moot. Without laboring unduly over whether some general bromide to the effect that "it's best for you to come clean on the rest of them, you know, just clear the books, and it might come easier for you in the long run" about possible happenings "in Frederick, Anne Arundel, all the counties in the State of Maryland" was the effective operative cause for some statement dealing with "something about Montgomery County," it is enough for us to note that no such statement (if, indeed, one was ever made and whatever it dealt with) was ever offered in evidence in the Montgomery County armed robbery trial.

The appellant, however, pushes his strained syllogism one step further and urges upon us the holding of *Edwards v. State,* 194 Md. 387, 71 A.2d 487 (1950), to the effect that "[w]here one confession is held to be involuntary and inadmissible a presumption exists that any subsequent confession was made by reason of the prior influence." *Id.* at 194 Md. 400, 71 A.2d 487. The appellant is not arguing, therefore, that anything done by Sergeant Krouse in Prince George's County directly contaminated the Montgomery County statement now in issue. He is arguing rather the two-step process generally referred to as "the fruit of the poisoned tree" doctrine. He urges upon us that the later Montgomery County statement is derivative evidence, an exploitation of the earlier and primary illegality.

■ When dealing with a "fruit of the poisoned tree" argument, however, the burden of establishing the primary taint is upon the defendant. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Smith and Samuels v. State,* 6 Md.App. 59, 250 A.2d 285 (1969). The State is not required to come forth and show 1) attenuation, 2) independent source, or 3) inevitable discovery, unless and until the defendant has established to the satisfaction of the court the primary taint. We hold that he has not done so in this case.

■ The primary taint the appellant sought to establish was an improperly induced confession to the Montgomery County armed robbery now under review. The effect that would follow from that cause, if established, would be the futility of subsequently denying a crime that had once been admitted. The appellant, however, has failed to establish not that some general inducement to say something ever occurred but that an improperly induced confession to this specific armed robbery ever occurred. This, of course, is what distinguishes this case from *Edwards v. State, supra.* In *Edwards,* the giving of the inadmissible first statement was clearly established, as were the contents of that first statement.

In the present case, by way of contrast, the appellant has shown us no first statement dealing with a specific admission to a specific crime in Montgomery County. He cannot claim the benefit of the "cat out of the bag" psychology, unless he establishes that there was a very specific cat that was erroneously released from the bag. It is not enough to show some general and undifferentiated inducement. It is not enough to show that the appellant did some undesignated thing as a result of that inducement. It is required that he establish that he confessed specifically to the crime in this case so that, to support his theory, his subsequent confession was nothing more than a reaffirmation. He has failed to do this, and we decline to anguish further over this clever but strained contention. The only evidence for the very point of

departure for this convoluted logic is entirely too speculative both as to the very making of a statement and as to its possible contents, if made: "I think I did make a statement, something about Montgomery County." That is simply not enough!

### The Notice Requirement

■ The appellant's remaining two contentions deal with his enhanced sentence under Art. 27, § 643B. The first of those contentions is frivolous. He went to trial on December 9, 1982. Maryland Rule 734c provides that the State is required to give a defendant fifteen days' notice prior to sentencing if it intends to seek enhanced punishment under the subsequent offender law. Section 643B has two gradations of enhanced punishment. In a nutshell, a "three-time loser" will be sentenced to no less than twenty-five years; a "four-time loser" will be given a mandatory life sentence, without possibility of parole. On September 22, 1982, eleven weeks before trial, the prosecutor wrote a letter to defense counsel, informing her of his intention to "seek a mandatory sentence pursuant to Art. 27, § 643B." The appellant now claims that this notice only alerted him to the possibility of a twenty-five-year sentence as a three-time loser and not to the possibility of a mandatory life sentence as a four-time loser. The point is frivolous.

The undergirding purpose of the notice requirement is not to erect an obstacle course for the State but to give the defendant a fair chance to prepare a defense against the enhanced punishment danger. The appellant here has not proffered how his preparations would have been different whether he was guarding against the danger of being labeled a four-time loser or a three-time loser. We can imagine no difference in the defense. The letter of notice set forth five prior convictions, any two of which could have served as the predicate for the lesser enhancement and any three of which could have served as the predicate for the greater enhancement. Obviously, a defendant would prepare any legitimate defense available against any of these

five prior convictions. An adequate defense forestalling the proof of as many as two of the prior offenses would, *ipso facto,* forestall proof of three offenses.[1] As a purely logical proposition, the defendant could make a better argument that being on notice to guard against three prior offenses did not prepare him to guard against two, since once he was prepared to defend against the possibility of a third prior conviction, he might have rested upon his oars and not bothered to prepare a defense against the first two, for the reason that that minimal number would not be enough in any event to subject him to the danger of mandatory life imprisonment.

The contention is hypertechnical. The defendant was adequately alerted to prepare any available defense against any or all of five prior convictions. Pursuant to that alert, he was in fact well prepared. Two of the predicate offenses proffered by the State were for convictions and incarcerations in Charles and Prince George's Counties, respectively, that occurred after the commission of the offense in this case. Recognizing the validity of the defense, the prosecutor conceded the invalidity of these two offenses for enhanced punishment purposes and did not offer them. The appellant, moreover, mounted a forceful attack in two separate regards on one of the remaining three predicate offenses—the armed robbery conviction in the District of Columbia. In a word, he was well prepared to defend. When the animating purpose of the notice requirement has been well served, as it was here, we are not going to permit ourselves to be distracted or "hung up" by strained formalities.

### The Prior Crimes of Violence

For his armed robbery conviction, the appellant was sentenced to a mandatory term of life imprisonment without

---

1. *A defense which is timely alerted to the necessity of holding the opposition to less than two touchdowns is, by definition, as prepared as it ever can be to hold the opposition to less than three touchdowns.*

possibility of parole under the provisions of Art. 27, § 643B(b), which provides:

> "*Mandatory life sentence.*—Any person who has served three separate terms of confinement in a correctional institution as a result of three separate convictions of any crime of violence shall be sentenced, on being convicted a fourth time of a crime of violence, to life imprisonment without the possibility of parole. Regardless of any other law to the contrary, the provisions of this section are mandatory."

In several different regards, the appellant challenges the legal sufficiency of the evidence to support this enhanced punishment.

Two of the predicate offenses pose no difficulty whatsoever. The evidence established convictions and terms of confinement for the following two offenses:

(1) The appellant was convicted of robbery, upon his plea of guilty to robbery, by Judge Joseph Mathias in the Circuit Court for Montgomery County on June 10, 1970. He was sentenced on August 10, 1970 to a term of imprisonment of three years. That sentence commenced on March 18, 1970 and was served;

(2) Leapfrogging for a moment the intermediate conviction in the District of Columbia, the appellant was convicted of armed robbery, upon his plea of guilty to armed robbery, by Judge Ernest Loveless in the Circuit Court for Prince George's County on January 30, 1975. He was sentenced on March 5, 1975 to a term of 16 years in the custody of the Division of Correction. That sentence began on September 27, 1974. It was to be served concurrently with the sentence previously imposed by the District of Columbia.

The controversy swirls exclusively about the intermediate conviction in the District of Columbia. The evidence established that the appellant entered a plea of guilty to armed robbery in the District of Columbia on January 18, 1973. He was sentenced to a term of eight years under the Federal

Youth Corrections Act, 18 U.S.C. §§ 5005–5026. When he was paroled, he still had seven years to serve. The 1975 sentence by Judge Loveless in Prince George's County was made to run concurrently with anything yet remaining under the District of Columbia sentence.

It is the appellant's contention that because he was still on parole under the District of Columbia sentence and because there existed the possibility that he would be found in violation of that parole and be required to serve the remaining portion of that sentence (he neither pleaded nor proved anything in this regard), his District of Columbia term of confinement was not "separate" from the subsequent term of confinement imposed by Judge Loveless in 1975. We find the appellant's argument to be very analogous to one raised unsuccessfully by the defendant in *McLee v. State,* 46 Md. App. 472, 418 A.2d 1238 (1980). In that case, the defendant argued that he was not eligible for enhanced punishment because he had not finished serving his necessary term of confinement for one of the predicate offenses. Prior to the 1979 conviction there under review, McLee had been convicted on two separate occasions, both convictions coming in 1970, of two separate crimes of violence not arising from a single incident. He received sentences of fifteen years for each conviction, the second sentence to be consecutive to the first. After serving seven years on the first sentence, McLee was released on parole. He was less than one year into that parole period and clearly within the fifteen-year potential of the first sentence, when the new crime of violence was perpetrated.

He objected to his mandatory twenty-five-year sentence on the ground that he was still serving, potentially if not actually, the predicate "term of confinement." In rejecting his argument and holding that the predicate term of confinement was sufficiently complete to serve as the basis for enhanced punishment, Judge Melvin reasoned for this Court, at 46 Md.App. 476–477, 418 A.2d 1238:

> "He argues, however, that because he is still serving a term of confinement in a correctional institution for his

prior convictions, he has not 'served at least one term of confinement' and thus is not eligible for the mandatory increased sentence. While we recognize a certain surface logic to this argument, we reject it. At the time appellant was convicted in 1979 of his third crime of violence he had served 'at least one term of confinement' for the 1970 offenses for which he was on parole, which would have been the entire prison term had he not violated his parole. In such a situation we do not interpret the statute so as to immunize third offenders from its effects. *Cf. Leuschner v. State,* 45 Md.App. 323, 354–355 [413 A.2d 227] (1980). To do so 'would be to place a premium on the violation of a parole, a result entirely foreign to the purpose of the act.' *See People v. Martin* [78 Cal.App.2d 340] 177 P.2d 813, 815 (1947), where the statute involved provided that every person convicted of certain specified felonies 'who shall have been previously twice convicted [of certain felonies] upon charges separately brought and tried, and *who shall have served separate [prison] terms therefor* . . . shall be adjudged a habitual criminal and shall be punished by imprisonment in the state prison for life.' (Emphasis added.) California Penal Code, § 644. The California court rejected, as we do, the argument that to invoke the statute it is necessary that the defendant have served the complete term of imprisonment imposed for the prior convictions."

■ Under the reasoning of *McLee v. State, supra,* we hold that the term of approximately one year actually served in the District of Columbia under the 1973 sentence was "separate" from the sixteen-year term imposed upon the appellant in Prince George's County in 1975. The two sentences imposed by two distinct jurisdictions for two separate crimes were separated by two years. As in *McLee,* at the time the appellant was convicted and sentenced in Prince George's County, he had served his term of confinement for the District of Columbia offense "for which he was on parole, which would have been the entire prison term had he not violated his parole." 46 Md.App. at 476–477, 418 A.2d

1238. To credit the appellant's argument here would be, as in *McLee,* "to place a premium on the violation of parole, a result entirely foreign to the purpose of the act." *See also Leuschner v. State,* 45 Md.App. 323, 354–355, 413 A.2d 227 (1980), *vacated on other grounds,* 451 U.S. 1014, 101 S.Ct. 3001, 69 L.Ed.2d 385 (1981).

Two of the subcontentions with respect to this District of Columbia conviction and term of confinement can and will be considered together. The appellant claims that, because the Federal Youth Corrections Act provides the option of confining an offender in places such as hospitals, farms, and forestry camps rather than in prisons or jails, there is no evidence that the appellant actually served a term of confinement "in a correctional institution." The appellant cites no authority, and we know of none, that such places of confinement would not qualify as "correctional institutions" within the contemplation of the enhanced punishment law. Recognizing the probable frailty of that argument, the appellant goes on to raise the possibility that, under the Youth Corrections Act, a youth offender need not necessarily be treated in a residential setting at all. The related subcontention is that there is no evidence to prove that the District of Columbia conviction was not "set aside" pursuant to that possibility set out in the Federal Youth Corrections Act.

We conclude that an adequate answer to both subcontentions was the appellant's admission at sentencing that he had indeed served a term of imprisonment for his federal offense and was released on parole after having served one year of that sentence. The appellant acknowledged that he was still on parole at the time of his 1975 sentencing in Prince George's County. Indeed, at the sentencing hearing, the appellant did not raise either of these factual contentions, as unquestionably he would have had there been any validity to them. It strikes us as rank gamesmanship to take the State to task now for failing to disprove in a vacuum those things, clearly knowable to him, which he failed to allege.

The most troubling of the subcontentions with respect to the enhanced sentence is the challenge that the District of Columbia conviction was not for "a crime of violence." It is, of course, required under § 643B(b) that each predicate conviction be for a "crime of violence." Where the prior conviction occurs in Maryland, there is no problem. Section 643B(a) defines "crime of violence" as including, *inter alia,* robbery. In the District of Columbia, it is not the common law crime of robbery that prevails but the specific provision of the District of Columbia Code (1973), § 22–2901, which defines robbery as:

"Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than 2 years nor more than 15 years."

The construction put upon that Code provision by the case law in the District of Columbia, *Jackson v. United States,* 359 F.2d 260 (D.C.Cir.1966), *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966); *Turner v. United States,* 16 F.2d 535, 536 (D.C.Cir.1926), is that the stealthy but nonviolent taking from the person, such as pickpocketing, constitutes robbery. The Court of Appeals meticulously parsed the nice distinction between robbery in Maryland and robbery in the District in *Temoney v. State,* 290 Md. 251, 262–264, 429 A.2d 1018 (1981). Because of the hypothetical possibility that a robbery conviction in the District might have been merely for pickpocketing, *Temoney v. State* concluded that a mere docket entry showing such a conviction in the District would not establish the necessary predicate offense for the enhancement of a Maryland sentence under § 643B. If all we had in the present case, therefore, was a District of Columbia conviction for simple robbery, *Temoney v. State* would be dispositive of the matter in the appellant's favor. *See also Butler v. State,* 46 Md.App. 317, 322–324,

416 A.2d 773 (1980); *Myers v. State,* 48 Md.App. 420, 422–423, 427 A.2d 1061 (1981).

There is a difference, however, between the predicate conviction now under scrutiny and those predicate convictions treated in *Temoney, Butler,* and *Myers.* We find that difference to be critical. The appellant in this case was convicted and sentenced in the District of Columbia in 1973 not simply for robbery but for armed robbery. Armed robbery in the District of Columbia is a combination of District of Columbia Code (1973), § 22–2901 (Robbery) and § 22–3202 (Additional Penalty for Committing Crime When Armed). The pertinent portion of § 22–3202 defines the class of persons eligible for enhanced punishment "for committing crime when armed":

> "*Any person who commits a crime of violence* in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machine-gun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles) . . . ." (Emphasis supplied.)

In the preceding cases, both the Court of Appeals and we were dealing with situations where a court of record in the District of Columbia had determined that *the defendant had perpetrated a robbery;* in this case, a court of record in the District of Columbia has determined that *the defendant has perpetrated a "crime of violence."*

The appellant now asks us to pile one strained and hypothetical improbability upon another. Because § 22–3202 proscribes not simply the use of a deadly weapon and the possession with intent to use the deadly weapon, while perpetrating the "crime of violence," but also proscribes "having readily available" a deadly weapon, while perpetrating a "crime of violence," there exists the theoretical possibility that an armed robbery in the District of Columbia might not be a crime of violence. Although 99% of all robberies even in the District of Columbia involve force or

threat of force, there is the possibility that the robber was merely a pickpocket. Although the use or intended use of a deadly weapon would ordinarily connote violence, there is the bare possibility that the perpetrator simply had the weapon readily available as a coincidental happenstance. Although the combining of two such highly unlikely possibilities raises the improbability exponentially, the appellant still argues the "law school hypothetical" that there might be a nonviolent pickpocket who nonviolently had a deadly weapon coincidentally available without any intention to use it. Such an interpretation is strained to a filament and we announce confidently that our Legislature never had such an exemption in mind.

If we were going to engage the appellant in a battle of strained constructions, we could argue, as readily as he argues for nonviolent armed robbery, that our Legislature contemplated that any felony was a crime of violence when, in § 643B(a), it used the phrase "felony or *other* crime of violence." (Emphasis supplied). Such strained constructions, however, are inappropriate, from whatever quarter they emanate.

The appellant has a double problem. First, he must escape the implication that the adjudication that he was armed with a deadly weapon while perpetrating a robbery connotes violence within the contemplation of the Maryland law. Secondly, he must explain away the finding of fact in the District of Columbia that, even before getting to the weapon question, he was "committing a crime of violence." For purposes of this avoidance, he looks to § 22–3201(f) of the District of Columbia Code, which defines "crime of violence." Section 22–3201(f) provides:

> " 'Crime of violence,' as used in this chapter, means any of the following crimes, or an attempt to commit any of the same, namely: Murder, manslaughter, rape, mayhem, maliciously disfiguring another, abduction, kidnaping, burglary, robbery, housebreaking, larceny, any assault with intent to kill, commit rape, or robbery, assault with a

dangerous weapon, or assault with intent to commit any offense punishable by imprisonment in the penitentiary."

The appellant argues that, since a "crime of violence" in the District of Columbia includes robbery, the pickpocketing possibility creates the paradoxical situation of a nonviolent crime of violence. The appellant reasons that the District of Columbia definition is flawed and does not mean what it necessarily means in Maryland. Our definition of "crime of violence" in § 643B(a) reads:

"As used in this section, the term 'crime of violence' means abduction; arson; kidnapping; manslaughter, except involuntary manslaughter; mayhem; murder; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault with intent to murder; and assault with intent to rape."

As a legislatively created litmus paper test or "bright line formula," the District of Columbia definition is no more flawed than the Maryland definition. Lurking within its "robbery," to be sure, is the remote possibility of nonviolent pickpocketing. Just as surely, there lurks within our "murder" the remote possibility of nonviolent murder by the omission to act on the part of one with a duty to act. Just as surely, there lurks within our "rape" or "sexual offense in the second degree" the remote possibility of a nonviolent sexual encounter under apparently consensual and even cordial circumstances but where the victim is under age, intoxicated, *non compos mentis,* or operating under a mistake of fact.

Even if our courts were to consider themselves bound by the Maryland legislative definition, would we be required, in order to negate in advance every remote and improbable possibility, to relitigate factually every predicate murder conviction from California and every predicate rape conviction from Maine along with every predicate armed robbery

conviction from the District of Columbia? Obviously, some common-sense solution must be effected in order to prevent the clear legislative will from being thwarted by endless law school hypotheticals.

The overwhelming majority of murders, rapes, and armed robberies (even in the District of Columbia) are crimes of violence, just as the overwhelming majority of criminal defendants are sane and the overwhelming majority of intentional killings are unjustified, unexcused, and unmitigated. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Evans v. State,* 28 Md.App. 640, 349 A.2d 300 (1975), *aff'd.* 278 Md. 197, 362 A.2d 629 (1976).

To avoid imposing upon the limited resources of the State the profligate and foolish burden of negating in advance every conceivable improbability, we hold that the State has the benefit, in a case such as this, of a Thayer-Wigmore burden-shifting rebuttable presumption. As the one with the closest knowledge of the circumstances, the defendant will rightfully be obligated to generate a genuine fact-finding question with respect to such improbable defenses. If the appellant was, indeed, that rare convicted armed robber who was no more than a pickpocket with a long-forgotten penknife buried in the lining of his jacket, there is no good reason why he should not be required to come forth and say so. Only when that has been done, will the presumption that an armed robbery is a crime of violence be dissipated and will the State be required to prove the actual facts constituting the alleged violence.

■ In this case, a sister jurisdiction adjudicated the appellant to have been a robber, an armed robber, the perpetrator of a "crime of violence" as defined by it. That is presumptively a "crime of violence" within the contemplation of § 643B, and the appellant has done nothing to rebut that presumption.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.