SAMUEL HILLARD *v.* STATE OF MARYLAND

[No. 209, September Term, 1978.]

*Decided November 3, 1978.*

The cause was submitted on briefs to MORTON, MOORE and WILNER, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Bradford C. Peabody, Assistant Public Defender,* for appellant.

Submitted by *Francis Bill Burch, Attorney General, Alice G. Pinderhughes, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Anthony McCarthy, Assistant State's Attorney for Prince George's County,* for appellee.

WILNER, J., delivered the opinion of the Court.

The sole issue in this appeal is whether a statement given by appellant while in police custody was prompted by an improper inducement offered by the interrogating officer. Claiming that it was, appellant urges that the Circuit Court for Prince George's County erred in admitting the statement into evidence. We disagree with appellant and shall therefore affirm the judgment against him.

Some factual background is necessary to a proper consideration of the issue raised by appellant. On the morning of April 8, 1977, appellant, along with three other men — Russell Campbell, Carroll Harrison, and James Herbert — drove to the home of one Warren Womack. Harrison and Campbell entered the house, shot Womack and robbed him of both money and heroin. Womack's 13-year old son was present in the house at the time, and to prevent him from being a witness, Campbell shot and killed the child.[1]

Campbell and Harrison then returned to the car where appellant and Herbert had been waiting for them, and all four drove to appellant's house where the heroin was divided.

Appellant was arrested in the District of Columbia during the afternoon of April 14, 1977, and taken to the police station in that jurisdiction. At his request, Ronald Tucker, his attorney, was called. At some point, upon the advice of counsel, appellant waived extradition, and was taken to a police station in Prince George's County. Some time later, the attorney (Tucker) came to the police station where he conferred with both appellant and Detective Earl Jones. Appellant was then questioned in Tucker's presence by Jones,

---

1. Campbell's conviction, arising from these events, was affirmed by this Court in an unreported *per curiam* opinion in Campbell v. State, No. 1115, Sept. Term, 1977, filed May 5, 1978.

and, upon counsel's advice, appellant gave an oral statement which was reduced to writing and signed by both appellant and his attorney. In this statement, appellant admitted receiving Herbert at his home in the early morning hours of April 8, 1977, for the purpose of going to Warren Womack's house to purchase narcotics. He also admitted giving Herbert a pistol but denied any knowledge that Campbell or Harrison planned to shoot Womack.

Subsequently, appellant, together with Campbell, Harrison, and Herbert, was charged in a nine-count indictment with the murder of the child, various degrees of assault upon Womack, robbery, larceny, unlawful possession of a handgun, and unlawful use of a handgun in the commission of a crime of violence. Appellant was ultimately convicted of but one of these counts — unlawful use of a handgun in the commission of a crime of violence — for which he was sentenced to a term of 10 years in prison. It is that conviction from which this appeal arises.[2]

Prior to trial, appellant, then represented by different counsel, moved to suppress the statement given by him on the grounds that appellant's former counsel, who advised him to make the statement, was incompetent, that appellant did not effectively waive his right to remain silent, and that "undue influence, including coercion, misrepresentation and improper inducement were used to obtain" the statement. As noted earlier, the only contention, among these, presented in this appeal is whether an improper inducement was offered by Detective Jones.

Two evidentiary hearings were held on appellant's motion to suppress. At the first hearing, held on July 22, 1977, appellant testified that, while detained at the District of Columbia police station, he was questioned without being advised of his "rights", that Detective Jones told him that he (Jones) "had some influence over the Court", that if appellant made a statement "he would go to bat for me, and that he

---

2. This conviction followed appellant's initial trial on December 12-14, 1977. The jury could not agree on a verdict with respect to the other counts, and a mistrial was declared as to them. Upon retrial in April, 1978, appellant was acquitted of the murder and robbery charges.

would make sure I get a reasonable bond that I could meet, and if I had to go to trial that he would testify favorably in my behalf." Additionally, appellant claimed that he was threatened that if he did not make a statement, "he just give me the murder charge for myself." Notwithstanding all of this, and the alleged refusal of the police to permit appellant to contact an attorney, he made no statement at that time.

Some time later, according to appellant, he consulted with Mr. Tucker, and, upon Tucker's advice, waived extradition and was taken to the Forestville police station in Prince George's County. Here, he claims, Detective Jones continued to question him, in the absence of counsel, "off and on for about four hours", notwithstanding that appellant was then suffering from "withdrawal" from heroin. Jones allegedly repeated his promise to "go to bat" for appellant, to "make sure" that he got a reasonable bond, to testify in his behalf, and indeed, if he caught the other co-defendants and they corroborated appellant's story, "he would cut me loose." After all of this, appellant consulted with Mr. Tucker, and, upon Tucker's advice, made a statement.

Detective Jones, as might be expected, gave an entirely different account. He said that he refrained from questioning appellant for some 3½ hours in order that Mr. Tucker could be present, and that all questioning took place in Tucker's presence. He specifically denied making any promises, threats, or inducements, and he denied as well that appellant was under the influence of any drugs, or in any pain. Throughout the interrogation, appellant was able to confer with Mr. Tucker, and, from time to time, the questioning was halted for that purpose. With respect to appellant's claim of inducement, Jones stated:

> "Mr. Tucker was told at that time that he was fully aware that I had nothing to say in matters like that, that he was aware he would have to go to the State's Attorney's Office for any consideration, that I had nothing to do with that. And he stated that he understood that, as a member of the Bar."

As to the alleged threat to let appellant take the murder "rap" alone, Jones stated that he had told both appellant and his attorney that he didn't need a statement from appellant "basically because I already knew what had occurred." In corroboration of Detective Jones' version of the events, the State offered into evidence a written statement, signed by both appellant and Tucker, showing that appellant was advised of his various *Miranda* "rights", and that he waived the same. Typed into this printed form is the additional statement: "My lawyer's name is Mr. Ronald Tucker and he is present in the room at this time. My lawyer, Mr. TUCKER, has advised me to make a statement." Included in the "waiver of rights" signed by appellant is the statement, "No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." Also offered in support of Detective Jones was the actual statement given by appellant — the subject of the suppression motion. This was in the form of a seven-page written transcript of questions and answers, each page being signed by appellant and witnessed either by Mr. Tucker or Detective Jones.

Upon this record, and in obvious disbelief of appellant's story, the court denied the motion to suppress.

Some two weeks later, appellant renewed his motion to suppress and requested a *de novo* hearing thereon, alleging that three witnesses, not known at the time of the earlier hearing, were available to testify to promises made by the police to induce appellant to make his statement. Upon this motion, the court held a *de novo* hearing immediately prior to the commencement of trial.

The second hearing commenced with Detective Jones again denying that any promises or threats were made, despite the persistence of Mr. Tucker in attempting to extract inducements. Appellant reiterated his story of the various promises allegedly made — to secure a low bail, to "go to bat" for him, and ultimately to "cut him loose". Tucker supported appellant to the extent of indicating that Jones had said that, although he didn't need a statement from appellant, if appellant was truthful, he would "go to bat" for him. By this, he explained that Jones could make no promise directly, but

he would convey to the State's Attorney's Office and would ultimately testify in court that appellant had been cooperative. Tucker's version was corroborated to some degree by his partner, Albert Preston, and by a paralegal who claimed to be present at the crucial interrogation.

Upon this evidence, the court again denied the motion. Disbelieving most of appellant's testimony, the court concluded:

> "Everybody seems to agree that the main thrust of all the discussions between Jones, his lawyer who was present and the defendant, was that Jones would go to bat for this defendant if what the defendant told him, number one, turned out to be true, not only would he go to bat — *indicating that the man maybe should be put on bond*— and not how much. Since this was a murder charge, neither Jones nor the State's Attorney or anybody else could set bond. The only one that could set bond would be the Court. So what this defendant was in fact told by Jones, *and I find as a fact this is what he was told,* that if you are telling me the truth about your involvement in the occurrence, I will go to bat for you to the extent that I will tell the State's Attorney's office and the Court, number one, that you have cooperated, number two, you have told me the truth, and number three, I believe you were not knowledgeable as far as the murder was concerned." (Emphasis supplied.)

Coupling this finding of fact with the continued presence of appellant's counsel throughout the interrogation, the court concluded that the method used to obtain the statement violated neither fundamental fairness nor any of appellant's more particular constitutional rights, and that the statement was therefore voluntarily given.

We note, in the first instance, that from our constitutionally mandated independent review of the record, we believe that the court's finding of fact, as recited above, was amply supported by the evidence. This includes both its finding that

blatant threats or direct promises to obtain a low bond or to "cut loose" appellant were not made as well as its finding that Jones did offer to "go to bat" for appellant in the limited fashion stated by the court. The question, then, is whether a promise to "go to bat" for an accused in the context noted amounts to such an improper inducement as to render the statement inadmissible as a matter of law.

In 1897, the United States Supreme Court stated that "[a] confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner . . . ." *Bram v. United States,* 168 U. S. 532, 543 (1897). Echoing this maxim, the Court of Appeals said, in *Kier v. State,* 213 Md. 556, 561 (1957), that, in Maryland, the State has the burden of establishing that "no force or coercion was exercised by the officers obtaining the confession, to cause the accused to confess, *and that no hope or promise was held out to the accused for the purpose of inducing him to confess."* (Emphasis supplied.) The Alabama court expressed the same rule, with some greater elaboration, this way in *Wallace v. State,* 275 So. 2d 634, 636 (Ala., 1973):

> "Any inducement of profit or benefit held out; any hope engineered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with if he will confess; either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner which may, in their nature, generate fear or hope render it not only proper but necessary that a confession made within a reasonable time afterwards shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made after all trace of hope or fear had been fully withdrawn or explained away and the mind of the prisoner made as free from fear, intimidation or hope for reward as if no attempt had ever been made to obtain such a confession. *The true test is whether, under all the surrounding circumstances, a confession has been*

*induced by a threat or a promise, express or implied,
operating to produce in the mind of the prisoner
apprehension of harm or hope of favor.*" (Emphasis
supplied.)

Although the courts are by no means of a single view on
this subject, the majority view appears to be that, absent
other coercive circumstances, the mere statement by an
interrogating police officer that a defendant's cooperation
would be brought to the attention of the prosecuting
authorities, or the court, or even the defendant's probation
officer, does *not* constitute an improper inducement and does
*not,* therefore, suffice to render a confession involuntary and
inadmissible. *See, for example, United States v. Frazier,* 434
F. 2d 994 (5th Cir., 1970); *United States v. Springer,* 460 F.
2d 1344 (7th Cir., 1972), *cert. denied,* 409 U. S. 873; *United
States v. Curtis,* 562 F. 2d 1153 (9th Cir., 1977); *People v.
Hubbard,* 302 N.E.2d 609 (Ill., 1973); *Wallace v. State, supra,*
275 So. 2d 634; *State v. Williams,* 358 So. 2d 1094 (Fla. App.,
1978); *State v. Mullin,* 286 So. 2d 36 (Fla. App., 1973). In
*United States v. Ferrara,* 377 F. 2d 16 (2nd Cir., 1967), *cert.
denied,* 389 U. S. 908, the court held that the defendant's
confession was not rendered involuntary because the
interrogating officer had stated that, if the defendant
cooperated, "I felt sure he would get out on reduced bail."
In reaching that result, the court observed, at page 17:

"The Supreme Court has consistently made clear
that the test of voluntariness is whether an
examination *of all the circumstances* discloses that
the conduct of 'law enforcement officials was such
as to overbear [the defendant's] will to resist and
bring about confessions not freely self-deter-
mined * * *.' [citations omitted] " (Emphasis
supplied.)

Many of the decisions reaching a contrary result — that a
promise to testify as to the defendant's cooperation, or to
bring it to the prosecutor's or the court's attention constitutes
an improper inducement rendering a subsequent confession
invalid — emanate from North Carolina, whose courts have

apparently taken a more stringent attitude than most in this regard. *See, for example, State v. Williams,* 235 S.E.2d 869 (N.C., 1977), and the companion cases of *State v. Fuqua,* 152 S.E.2d 68 (N.C., 1967), and *State v. May,* 152 S.E.2d 72 (N.C., 1967). *See also,* however, *People v. Pallister,* 165 N.W.2d 319 (Mich., 1969), where a promise that the police would aid the defendant in gaining a reduction of the charge and release on bond invalidated the resulting confession; *also Fillinger v. State,* 349 So. 2d 714 (Fla. App., 1977), where a promise to bring the accused's cooperation to the attention of the prosecutor was held to be impermissible in light of the fact that the accused, initially charged with petty larceny, was confined to a wheelchair and threatened with arrest on a grand larceny charge as well.

The holdings in these various cases should not be taken out of the context that produced them. A promise to bring a defendant's cooperation to the attention of a prosecutor or a court may be improperly inducive under one set of circumstances, but not so under other circumstances. Such a commitment, in other words, is not inherently improper; it cannot be said, as a matter of law, to constitute an impermissible inducement.

There was ample evidence in this case to show that Detective Jones was not especially anxious to have appellant confess — that he did not need his confession in order to "make" his case. There was evidence to show that the detective, in fact, resisted the entreaties of appellant's lawyer to extract promises, that he continually told both appellant and the lawyer that he could make no commitments as to charges or bail — that only the State's Attorney had that authority. With this background, with counsel being present throughout the interrogation (and indeed participating in the questioning), in the utter absence of other coercive circumstances, we cannot conclude that the trial court erred in determining that the confession was freely given, and thus admissible.

*Judgment affirmed; appellant to pay the costs.*