SAMUEL (NMN) HILLARD *v.* STATE OF MARYLAND

[No. 133, September Term, 1978.]

*Decided October 5, 1979.*

146

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*Bradford C. Peabody, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alice G. Pinderhughes, Assistant Attorney General,* with

whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The question posed for our consideration in this criminal cause is whether petitioner Samuel Hillard's inculpatory statement was prompted by improper police inducement, thereby rendering its admission as evidence prejudicial error, requiring the reversal of his conviction in the Circuit Court for Prince George's County for using a handgun in the commission of a felony. Md. Code (1957, 1976 Repl. Vol.), Art. 27, § 36B(d). The trial court and the Court of Special Appeals found the statement in question to have been voluntarily made and thus properly admitted; however, we conclude that longstanding precedent of this Court portends a different answer. Since we further determine that the erroneous admission of this evidence was prejudicial to the defendant, his conviction may not stand.

In mid-December 1977, petitioner was tried before a jury on a nine-count indictment charging him with various criminal offenses relating to an armed robbery that resulted in the wounding of Warren Womack and the death of his thirteen-year old son, Jerome Hales. At the trial presided over by Prince George's County Circuit Court Judge William H. McCullough, the evidence introduced shows that on the morning of April 8, 1977, Carroll Harrison and Russell Campbell, armed with a revolver belonging to the petitioner, entered Mr. Womack's home in Oxon Hill, Maryland, shot the owner in the course of robbing him of money and heroin, and then killed his teenage son to prevent the young man from testifying as a witness to the assault upon his father. Following this episode, the two men ran from the house, entered a car in which James Herbert and petitioner Samuel Hillard were awaiting them, and then drove to the Hillard home in southeast Washington, D. C., where the stolen heroin was divided among the four. As to his role in the robbery, in his seven-page written statement to the police, which he claims was involuntarily made, petitioner in sum admitted that when Herbert came to his home on April 8 to pick him

up on the way to the Womack residence to buy narcotics, he gave him a pistol for Herbert's protection; however, petitioner denied he knew that either Campbell or Harrison planned to rob Womack or to shoot the father and his son.

Petitioner's contention concerning this statement brings under scrutiny the events surrounding that declaration, circumstances that were the subject of two suppression hearings. The record compiled in the circuit court at those proceedings reveals that six days after the robbery and shootings at the Womack residence, Hillard was arrested in the District of Columbia and, after waiving extradition, was transported that same day to a Prince George's County police station. There, several hours following his arrival, the statement now in question was given by Hillard. With regard to his statement,· the petitioner testified at the hearings conducted to determine its voluntariness that during questioning, Prince George's County Police Detective Earl W. Jones induced him to make the remarks that were received in evidence against him by promising that he would try to secure a low bail for petitioner, that he would "go to bat" for petitioner before the court, and that ultimately petitioner would be "cut loose" if the statement he made was corroborated by any of the others involved in the robbery and slaying. Hillard attempted to bolster his assertions principally with the testimony of Ronald Tucker, Esq., his attorney, and his attorney's paralegal assistant, both of whom were present at the time the statement was made. Detective Jones, on the other hand, testified that although petitioner's attorney repeatedly sought promises of help in exchange for a statement by Hillard, he told the attorney he could do nothing for his client. The State also introduced into evidence an alleged *Miranda* rights waiver, signed by both the petitioner and his attorney at the time the complained of statement was made, which related that "[y]ou are further advised that you are not promised anything to make a statement and no threats or inducements have been made to compel you to make a statement."

On July 22, 1977, Prince George's County Circuit Court Judge William B. Bowie conducted a hearing on petitioner's

initial motion to suppress but denied the relief sought without further explanation. Subsequently, petitioner's suppression request was considered at another hearing by Judge McCullough. That de novo proceeding was conducted on December 12, 1977, just prior to the selection of a jury for trial on the merits. The judge, after hearing from the parties, announced the following ruling:

> Everybody seems to agree that the main thrust of all the discussions between Jones, his lawyer who was present and the defendant, was that Jones would go to bat for this defendant if what the defendant told him, number one, turned out to be true, not only would he go to bat — indicating that the man maybe should be put on bond — and not how much. . . . So what this defendant was in fact told by Jones, and I find as a fact this is what he was told, that if you are telling me the truth about your involvement in the occurrence, I will go to bat for you to the extent that I will tell the State's Attorney's office and the Court, number one, that you have cooperated, number two, you have told me the truth, and number three, I believe you were not knowledgeable as far as the murder was concerned. I don't think that makes this statement inadmissible, cut it as you may. . . .
>
> . . . [H]e had his attorney right then and there right present on the spot. He is given time to confer with his attorney. His attorney also knows from what the defendant has told him and what Jones had told the attorney, that Jones pretty well already knows this defendant's involvement and Jones could have said at that time "I don't need your confession. We have got enough evidence without it." So I don't believe that the method by which Detective Jones secured this confession violated any constitutional rights or violated any fundamental fairness in the procuring of this confession.
>
> Motion to suppress is denied.

On the basis of this ruling by the court that petitioner's admissions were voluntarily made, over his objection they were received as evidence at the ensuing trial that ultimately resulted in his conviction of using a handgun in the commission of a felony. On appeal, the Court of Special Appeals, relying almost exclusively on federal authorities and decisions of courts in our sister states, found petitioner's statement was properly admitted in evidence as voluntarily made and affirmed Hillard's conviction.[1] *Hillard v. State,* 40 Md. App. 600, 392 A.2d 1181 (1978). We granted certiorari.

## I

In explaining why we believe the self-incriminatory statement made by the petitioner here should not have been placed in evidence in his case, it appears wise to recall that, regardless of constitutional strictures, this Court for more than one hundred years has adhered to the tenet that, with regard to fairness in the conduct of a trial, Maryland criminal law requires no confession or other significantly incriminating remark allegedly made by an accused be used as evidence against him, unless it first be shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary.[2] *E.g.,*

---

1. As is evident from our decision in this case, it is usually preferable to determine initially whether the activity complained of comports with the requirements of this State's nonconstitutional law, and then, only if the court finds that it so complies, does it become necessary to reach the issue of whether any constitutional stricture prohibits the conduct in question.

We in no way attempt in this case to evaluate whether federal or Maryland constitutional law establishes the same voluntariness test as that enunciated in this opinion. We rest our decision solely on Maryland nonconstitutional law because of the well-settled principle "that courts should not decide constitutional issues unnecessarily." State v. Raithel, 285 Md. 478, 484, 404 A.2d 264, 267 (1979). Whether United States and Maryland constitutional strictures are similar to each other or similar to our nonconstitutional requirements is irrelevant, since the activity complained of here does not satisfy the requirements of this State's nonconstitutional law.

2. Although there might be some question under the facts of this case whether petitioner's statement was, strictly speaking, a confession — implying that the matter confessed constituted a crime — or only an admission — tending to establish the ultimate fact of guilt without, in and of itself, authorizing a conviction — it nonetheless is "significantly incriminating" and thus could be admitted into evidence at trial only if it met the test of voluntariness. Stewart v. State, 232 Md. 318, 323, 193 A.2d 40, 43 (1963).

*State v. Kidd,* 281 Md. 32, 35-36, 375 A.2d 1105, 1108, *cert. denied,* 434 U.S. 1002 (1977); *Watts v. State,* 99 Md. 30, 35-36, 57 A. 542, 544 (1904); *Biscoe v. State,* 67 Md. 6, 7, 8 A. 571, 571 (1887); *Nicholson v. State,* 38 Md. 140, 153 (1873). Of equal venerability is the requirement in this State that the government shoulder the responsibility of showing affirmatively that the inculpatory statement was freely and voluntarily made and thus was the product of neither a promise nor a threat. *E.g., State v. Kidd, supra,* 281 Md. at 37, 375 A.2d at 1109; *Edwards v. State,* 194 Md. 387, 396, 71 A.2d 487, 491 (1950); *McCleary v. State,* 122 Md. 394, 399, 89 A. 1100, 1102 (1914); *Watts v. State, supra,* 99 Md. at 36, 57 A. at 544. Demonstrative of the importance that we have long placed upon this mandate is the imperative that the voluntary nature of a confession be twice established before it can be utilized by the trier of fact, together with any other evidence, in determining guilt or innocence — initially, to the satisfaction of the trial judge, out of the hearing of the jury, as a mixed question of law and fact, and then, if the statement has been placed in evidence, by a determination of the trier of fact, be it court or jury, that beyond any reasonable doubt the confession was freely and voluntarily made. *E.g., State v. Kidd, supra,* 281 Md. at 37-38, 375 A.2d at 1109; *Dempsey v. State,* 277 Md. 134, 143-45, 355 A.2d 455, 460 (1976); *Gill v. State,* 265 Md. 350, 357-58, 289 A.2d 575, 579-80 (1972); *Day v. State,* 196 Md. 384, 399, 76 A.2d 729, 736 (1950).

In reiterating these well-established precepts, we can but agree with this Court's earlier observation that "[t]here is no difficulty in regard to [these rules], the trouble is in [their] application . . . to the facts of each particular case, that is, whether it was a free and voluntary confession, or whether it was procured by the influence of another under a hope of favor or advantage if made, or fear of harm or disadvantage of some kind if withheld." *Biscoe v. State, supra,* 67 Md. at 7, 8 A. at 571. While any decision concerning the voluntariness of a statement necessarily must rest on the facts of the case involved, we nonetheless find that, with regard to promises and other similar forms of inducement designed to elicit a defendant's confession, this Court, in a series of cases that

stretch back into the last century, has established certain boundaries within which police conduct must be contained.

Perhaps the earliest of these decisions is *Nicholson v. State, supra,* 38 Md. at 152-54, decided over one hundred years ago, in which this Court found that the State had met its burden in showing that the defendant's testimony regarding the circumstances surrounding his confession was not truthful, but indicated that if he had spoken the truth with respect to what occurred at the time his statement was given, the involuntary nature of his admission would have been established by his allegation that his confession came after he was told " 'let it out before [your co-defendant] squeals, for if you do not, [the co-defendant] will squeal before you, and you will get the worst of it.' " *Nicholson* was followed by *Biscoe v. State, supra,* 67 Md. at 7-10, 8 A. at 571-73, in which this Court found that the defendant's confession, given after an official's exhortation " 'that it would be better for him to tell the truth, and have no more trouble about it,' " was involuntary as compelled in response to the officer's promise that the defendant's problems would end if a truthful statement was given. Some seventeen years later in *Watts v. State, supra,* 99 Md. at 35-36, 57 A. at 544-45, a defendant's confession was found to be involuntary as improperly induced because it was given after he was told by a newspaper reporter, with the sheriff present, that " 'it would be possibly better for him if he would make a clean statement, so it would not appear erroneously in the papers; . . . as my paper was an evening paper, the correct statement would come out first.' " More recently in *Lubinski v. State,* 180 Md. 1, 4-6, 22 A.2d 455, 457-59 (1941), this Court, although affirming the trial court's conclusion that no such promise was made, acknowledged that, if it had been truthful, the defendant's testimony would have been sufficient to establish his statement was involuntary when it was asserted that, in response to the defendant's query as to whether he had to give a statement, a police officer answered " '[n]o, but it will help you a lot.' " Finally, in *Edwards v. State, supra,* 194 Md. 394-99, 71 A.2d at 490-92, a confession was held to have been involuntarily induced because it was given after the interrogating officer urged the defendant to tell the truth

while showing him a letter relating to another criminal cause in which the author admitted it had been a mistake for him, at the time he was arrested, not to have listened to what the officer said. See also *Kier v. State,* 213 Md. 556, 559-63, 132 A.2d 494, 496-99 (1957).

From this line of cases, it clearly emerges that under Maryland criminal law, independent of any federal constitutional requirement, if an accused is told, or it is implied, that making an inculpatory statement will be to his advantage, in that he will be given help or some special consideration, and he makes remarks in reliance on that inducement, his declaration will be considered to have been involuntarily made and therefore inadmissible. In examining the facts of this case with this principle in mind, there can be little doubt that Detective Jones made an improper promise to the defendant in exchange for his statement. In his findings of fact at the second suppression hearing, which we cannot say are clearly erroneous in light of the record established at that proceeding, the trial judge stated quite emphatically:

> So what this defendant was in fact told by Jones, and I find as a fact this is what he was told, that if you are telling me the truth about your involvement in the occurrence, I will go to bat for you to the extent that I will tell the State's Attorney's office and the Court, number one, that you have cooperated, number two, you have told me the truth, and number three, I believe you were not knowledgeable as far as the murder was concerned.

This finding judicially confirmed that the officer had promised the defendant help if he would make a statement and, when coupled with the fact that the State did not meet or even attempt to fulfill its burden of demonstrating that the improper promises failed to induce Hillard's admissions, established the statement in question here was involuntarily obtained and therefore inadmissible at petitioner's trial.[3]

---

3. We would add that the result we reach here is in no way inconsistent with this Court's earlier decision in Ralph v. State, 226 Md. 480, 174 A.2d 163

Moreover, the presence of the petitioner's attorney at the time the statement was made does not compel a different result in this instance. While it is one factor to be considered in determining whether a statement is made voluntarily, the presence of an attorney, in and of itself, does not automatically convert what would otherwise be an involuntary statement into one that is voluntary. *See* Md. Rule 731 c (even though attorney is present, guilty plea cannot be accepted until trial judge questions defendant on record to determine if plea is voluntary); *cf. Edwards v. State, supra,* 194 Md. at 394, 398-99, 71 A.2d at 490, 492 (even though father present at time statement given, son's confession held inadmissible because induced by police promise). Rather, it must be shown, as it was not in this case, that the defendant's decision to make a statement, whether arrived at with or without the advice of counsel, was not induced by any promise of favor or threat of punishment.

## II

Having concluded that Hillard's confession should not have been received into evidence, we must next consider the State's assertion that if this be error, reversal is not required because the error is harmless in the circumstances present here. In urging this result, the Attorney General principally relies upon the fact that when Hillard, after the close of the prosecution's case, voluntarily testified and, with one insignificant exception, repeated the same inculpatory remarks as those contained in his written declaration, he eradicated any mischief caused by the improper admission of his custodial statement.

---

(1961), *cert. denied,* 369 U.S. 813 (1962). In *Ralph,* the Court was confronted with a situation in which a police officer admitted telling the defendant prior to his confession that " 'it would be better if he told the truth.' " *Id.* at 486 [166]. In examining the same authorities we have discussed above, the Court determined that those cases did not control because "in each of these cases ... there was something more than a flat statement that 'it would be better if he told the truth.' " *Id.* Such a distinction, if it is indeed viable, does not apply here, however, for the trial judge's factual finding in the present case establishes that by promising the petitioner a *quid pro quo,* the detective did far more than simply mention to the petitioner that it would be "better" if he told the truth.

This Court has discussed, on a number of occasions, the criteria to be used in resolving a harmless error claim. *See, e.g., Crawford v. State,* 285 Md. 431, 456, 404 A.2d 244, 257 (1979); *Dempsey v. State,* 277 Md. 134, 150-51, 355 A.2d 455, 463-64 (1976); *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976); *Younie v. State,* 272 Md. 233, 245-46, 322 A.2d 211, 218-19 (1974). The test which we have fashioned for evaluating errors, whether of constitutional dimension or evidentiary in nature, was probably best articulated by Judge O'Donnell in his opinion for the Court in *Dorsey v. State, supra.* After reviewing the decisions of the Supreme Court, as well as our own previous ventures into this field we concluded in *Dorsey* that:

> [W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. [*Id.* at 659, 350 A.2d at 678].

As we stated in *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976), decided contemporaneously with *Dorsey* :

> The essence of this test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded. [*Id.* at 674, 350 A.2d at 687].

Furthermore, the burden of demonstrating the innocuous nature of an erroneous ruling is upon the State as the beneficiary of the transgression. *Dempsey v. State, supra,* 277 Md. at 150, 355 A.2d at 463; *Dorsey v. State, supra,* 276 Md. at 658, 350 A.2d at 677.

In an attempt to meet this burden, the Attorney General relies not only on the facts previously mentioned concerning the defendant's trial testimony, but also reminds us of the

longstanding evidentiary rule in this State, as well as many of our sister states, that the admission of improper evidence cannot be used as grounds for reversal where the defendant gives testimony on direct examination that establishes the same facts as those to which he objects. *See, e.g., Peisner v. State,* 236 Md. 137, 144-45, 202 A.2d 585, 590 (1964), *cert. denied,* 379 U.S. 1001 (1965); *Connor v. State,* 225 Md. 543. 555, 171 A.2d 699, 705-06, *cert. denied,* 368 U.S. 906 (1961); *Newkirk v. State,* 134 Md. 310, 318-19, 106 A. 694, 697 (1919); *Hardie v. State,* 260 Ala. 75, 68 So. 2d 35, 38 (1953); *Commonwealth v. McNeil,* 328 Mass. 436, 104 N.E.2d 153, 155 (1952); *Owens v. State,* 202 Tenn. 679, 308 S.W.2d 423, 424 (1957). Whereas, in general, we recognize the continuing vitality of these decisions, we note that they pre-date the exception to this rule which was identified by the United States Supreme Court in *Harrison v. United States,* 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008 (1968), as well as by the courts of other jurisdictions, that a defendant's election to testify will not cure the prior receipt into evidence of an involuntary confession because of the possibility, absent conclusive evidence to the contrary, that his verbal reiteration of this admission at trial was induced by the receipt of his custodial statement. *E.g., id.* at 222-25; *Smith v. Estelle,* 527 F.2d 430, 433-34 (5th Cir. 1976); *People v. Arnold,* 66 Cal.2d 438, 426 P.2d 515, 523, 58 Cal. Rptr. 115 (1967); *People v. Spencer,* 66 Cal.2d 158, 424 P.2d 715, 719-23, 57 Cal. Rptr. 163 (1967); *Smith v. State,* 140 Ga. App. 94, 230 S.E.2d 101, 102 (1976); *People v. Wilson,* 60 Ill. 2d 235, 326 N.E.2d 378, 380-82 (1975); *Keys v. State,* 283 So. 2d 919, 924-27 (Miss. 1973); *Thomas v. State,* 572 S.W.2d 507, 512 (Tex.Crim.App. 1978). *See generally* Saltzburg, *The Harm of Harmless Error,* 59 Va. L. Rev. 988, 1001 n. 38 (1973). Thus, the issue becomes "not *whether* [Hillard] made a knowing decision to testify but *why, " Harrison v. United States, supra,* 392 U.S. at 223, for as we said in *Dorsey, supra:* "An evidentiary or procedural error in a trial is bound, in some fashion, to affect the delicately balanced, decisional process. The abnegation of a particular rule upon which the defense intended to rely may often inflict more damage than initially apparent; . . ." 276 Md. at 657, 350 A.2d at 677.

In *Harrison,* after confessions illegally procured from the defendant had been admitted into evidence, he testified and made certain admissions which were damaging to his cause. When his conviction which followed was reversed on appeal because of the erroneously admitted confessions, the prosecution, upon retrial, introduced Harrison's testimony from the earlier proceeding. The Supreme Court reversed the subsequent conviction, holding that the trial testimony was the fruit of the inadmissible confessions and therefore subject to exclusion. The decision was based on the premise that if the defendant testified "in order to overcome the impact of confessions illegally obtained," the testimony was tainted by the same illegality as the initial statements, *id.* at 233; and it was not necessary that Harrison have established that his trial testimony was as a matter of fact impelled by the use of the inadmissible remarks. The Court reasoned that "having illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would not have testified as he did if his inadmissible confessions had not been used. . . . [Instead,] the Government must show that its illegal action did not induce his testimony." *Id.* at 224-25.

We conclude that these same considerations should be applied in determining whether an error of the type present in the case we now consider is harmless. This holding is influenced by the longstanding public policy of this State against the use of involuntary confessions, which policy can be said to implicitly stem from two interrelated concerns — the belief that an involuntary or coerced confession is quite likely to be contrary to the truth, and also the recognition of the devastating effect which an adverse statement from a defendant's own lips may have upon the trier of fact in determining his guilt or innocence.[4] *See Nicholson v. State,* 38 Md. 140, 156-57 (1873); *accord, Jackson v. Denno,* 378 U.S. 368, 385-90, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964); *Payne v.*

---

4. Even though not controlling here, it is interesting to note, in this regard, that in his closing remarks to the jury, the state's attorney continually referred to the admissions contained in the defendant's custodial statement rather than those of his trial testimony.

*Arkansas,* 356 U.S. 560, 568, 2 L. Ed. 2d 975, 78 S. Ct. 844 (1958); *People v. Spencer,* 66 Cal. 2d 158, 424 P.2d 715, 723, 57 Cal. Rptr. 163 (1967); *People v. Parham,* 60 Cal. 2d 378, 384 P.2d 1001, 1005, 33 Cal. Rptr. 497 (1963), *cert. denied,* 377 U.S. 945, 12 L. Ed. 2d 308, 84 S. Ct. 1353 (1964). Although no explicit evidence exists that the defendant Hillard was impelled to testify by the prior introduction of his written confession, neither is there any to the contrary; consequently, the admission of this "evidentiary bombshell" leaves no doubt in our mind that we must recognize the existence of at least a reasonable possibility that the government's use of his written involuntary confession provoked his verbal testimony at trial and, therefore, destroys any assertion that his in court testimony rendered harmless the erroneous receipt of the earlier statement. *Accord, Smith v. Estelle, supra; Collins v. Brierley,* 336 F. Supp. 1024, 1027-28 (W.D. Pa. 1971), *rev'd on other grounds,* 492 F.2d 735, *cert. denied,* 419 U.S. 877 (1974); *State ex rel. LaSota v. Corcoran,* 119 Ariz. 573, 583 P.2d 229, 238 (1978) (in banc); *People v. Morse,* 70 Cal. 2d 711, 452 P.2d 607, 630, 76 Cal. Rptr. 391 (1969), *cert. denied,* 397 U.S. 944 (1970); *People v. Spencer, supra; State v. Buteau,* 136 Conn. 113, 68 A.2d 681, 682 (1949); *La Rue v. State,* 137 Ga. App. 762, 224 S.E.2d 837, 840-41 (1976); *People v. Wilson, supra; People v. Rand,* 29 Ill. App. 3d 873, 331 N.E.2d 15, 19-20 (1975); *Keys v. State, supra; Com. v. Perry,* 379 A.2d 545, 548 (Pa. 1977); *Thomas v. State, supra; cf. People v. Ramos,* 40 N.Y.2d 610, 357 N.E.2d 955, 960, 389 N.Y.S.2d 299 (1976) (guilty pleas); *Alvarez v. State,* 511 S.W.2d 493, 496 (Tex.Crim.App. 1974) (prior crimes). *See generally Brafman v. State,* 276 Md. 676, 680-81, 349 A.2d 632, 634 (1976) (although hearsay is usually harmless, father's outcry concerning son's guilt raised reasonable possibility of influencing jury).

In addition, we note that our recent reaffirmation in *Brown v. State,* 281 Md. 241, 246, 378 A.2d 1104, 1108 (1977) of the principle that one may not be convicted upon the uncorroborated testimony of an accomplice supplies another reason as to why we should disregard Hillard's trial testimony in analyzing the harmless error issue. The record indicates that the only evidence introduced by the State in its

case-in-chief was the testimony of the accomplice, Campbell, and the involuntary statement of Hillard. Without the confession, the State would not have been able to survive a motion for a judgment of acquittal, and the defendant would never have been called upon to make such a crucial decision as whether to testify. We, therefore, cannot permit the defendant's resolution of this artificially created dilemma to be advantageously utilized by the State to sustain its burden on the harmlessness question.[5] *Accord, People v. Polk,* 63 Cal. 2d 443, 406 P.2d 641, 644-45, 47 Cal. Rptr. 1 (1965), *cert. denied,* 384 U.S. 1010 (1966); *La Rue v. State, supra,* 224 S.E.2d at 840.

Since we have concluded that the written statement should not have been received into evidence, and we cannot say that the error committed in doing so was harmless beyond a reasonable doubt, it follows that Hillard's conviction cannot be permitted to stand.

> *Judgment of the Court of Special Appeals reversed, case remanded to that court with direction to reverse the judgment of the Circuit Court for Prince George's County and remand for a new trial. Pursuant to Md. Rule 882 f, costs are not reallocated as part of the judgment of this Court.*

---

5. While the record before us provides insufficient evidence upon which to convict Mr. Hillard once the confession and its fruits are rejected, we nevertheless must grant a new trial for we will not presume that this is all the evidence which the State could produce. *See* State v. Boone, 284 Md. 1, 16-17, 393 A.2d 1361, 1369 (1978). Judge Cole dissented from the granting of a new trial in *Boone, supra,* 284 Md. at 18-21, 393 A.2d at 1370-72, and continues to adhere to the views he there expressed.

Furthermore, our decision here in no way compromises the law of this State that corroboration of an accomplice may, when properly admitted, be provided by the defendant's own statements, *see* McDowell v. State, 231 Md. 205, 214, 189 A.2d 611, 616 (1963); Brown v. State, 39 Md. App. 497, 505-06, 388 A.2d 130, 135-36 (1978), *rev'd on other grounds,* 285 Md. 469, 403 A.2d 788 (1979), or Md. Rule 756 a that a defendant withdraws his motion for judgment of acquittal at the close of the State's case by presenting evidence in his own behalf.