552 A.2d 1345

Robin Renay ROSS

v.

STATE of Maryland.

No. 747, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Feb. 6, 1989.

Garland E. Lowe (Kimberly D. Marshall, on the brief), Silver Spring, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Argued before MOYLAN, POLLITT and JAMES S. GETTY (retired, Specially Assigned), JJ.

MOYLAN, Judge.

The appellant, Robin Renay Ross, was convicted by a Montgomery County jury, presided over by Judge Calvin R. Sanders, of two separate instances of unlawful use of the telephone. Upon this appeal, he raises the following three contentions:

1.  That a confession he gave to the police violated his Fifth Amendment privilege against compelled self-incrimination and should not, therefore, have been received in evidence;

2.  That the admission into evidence of an equipment request and log sheet from the telephone company violat-

ed his Sixth Amendment right to be confronted by his accusers; and

3. That the failure of the State to provide him, as part of routine discovery, the telephone log of the crime victim and the equipment request and log sheet of the telephone company, constituted reversible error.

Marion Jones began receiving harassing telephone calls on January 25, 1987. The harassing calls persisted through the months of March and April. At the request of the telephone company, Ms. Jones maintained a log of the harassing calls. She also gave the telephone company authorization to place a trace on the incoming calls. The trace ultimately led back to the appellant. On May 5, the appellant gave a confession to Officer Mancuso of the Prince George's County Police Department, in which he acknowledged having made approximately fifteen calls to Ms. Jones.

## COMPELLED SELF–INCRIMINATION

The appellant's first contention is that his May 5 confession to Officer Mancuso violated his Fifth Amendment privilege against compelled self-incrimination. Judge Sanders found otherwise and we affirm that finding.

The appellant has framed his contention explicitly and exclusively in terms of the privilege against compelled self-incrimination guaranteed by the Fifth Amendment to the Constitution of the United States. We are going to respond to the contention, therefore, exclusively in terms of the Fifth Amendment privilege. We point this out because there is today among many members of the bar an intellectually undisciplined tendency to treat the Fifth Amendment privilege as little more than loose shorthand for confession law generally. Such is not the case.

Confessions, of course, may be deemed admissible or inadmissible according to various frameworks of analysis. They may offend, by being involuntary for instance, the due process clause of the Fourteenth Amendment of the Federal

Constitution. *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) and *Columbe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). They may offend, in the case of accused persons at least, the Sixth Amendment right to counsel. *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Since 1966, they may offend, by being compelled, the Fifth Amendment privilege against compelled self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). They may offend Article 22 of the Maryland Declaration of Rights, although that constitutional privilege has been interpreted to be *in pari materia* with the Federal Fifth Amendment. *Brown v. State,* 233 Md. 288, 196 A.2d 614 (1964); *State v. Panagoulis,* 253 Md. 699, 253 A.2d 877 (1969). They may also offend the common law of Maryland as it has been interpreted by such cases as *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979).

To invoke one of those frameworks of analysis is by no means to invoke them all. Their histories are different. Their purposes are different. Their implementing rules, it logically follows, are different as well.

■ Our only concern in this case will be with the privilege against compelled self-incrimination, as invoked by the appellant. Let it be noted at the outset that there is no such thing as a constitutional privilege against self-incrimination. There is a privilege only against *compelled* self-incrimination. The key element is compulsion. The core purpose of the privilege is not to protect a defendant against self-incrimination generally nor even to guard a defendant against foolish and ill-advised self-incrimination; it is to shield a defendant against governmental coercion.

The marriage between confession law and the Fifth Amendment privilege was made by *Miranda v. Arizona. Miranda* is a set of judicially created rules designed to

implement the undergirding constitutional guarantee. Where the risk of compulsion is present, *Miranda*'s prophylactic rules are at hand as the judicially designed antidote. Where there is no compulsion, on the other hand, there is no privilege to be implemented and, therefore, no *Miranda*. Implementing rules cannot be broader in their application than the thing being implemented.

In the ordinary course of events, it would have been necessary for a defendant to show, by the totality of the circumstances, the presence of actual compulsion before he would be entitled to *Miranda* warnings. *Miranda*, however, gave the defendant the benefit of a "bright line formula" or short-cut to the finding of compulsion. It announced, as a working principle, that custodial interrogation is inherently compelling. When both custody and interrogation are present, therefore, the indispensable element of compulsion is *ipso facto* demonstrated so as to engage the gears of the Fifth Amendment privilege. Absent either the custody or the interrogation, on the other hand, there is no handy short-cut to the finding of compulsion. There is, therefore, no entitlement to *Miranda* warnings.

The appellant here was not in custody when he gave his May 5 statement to Officer Mancuso. Pursuant to a telephone call from the officer, the appellant agreed to come in to the police station to be interviewed. When the statement was concluded, the appellant was free to leave and he did leave. He was not arrested until May 16, eleven days later. The appellant was gratuitously given the benefit of *Miranda* warnings, although they were not necessary because of the absence of custody and the absence, therefore, of the element of compulsion. *See Cummings v. State*, 27 Md.App. 361, 341 A.2d 294 (1975).

Not only was there lacking one of the two necessary predicate facts for a presumption of compulsion under *Miranda*, but the actual evidence produced at the suppression hearing belied any suggestion of compulsion. The appellant was 26 years of age and a high school graduate.

He was employed at an automobile repair shop. He was not under arrest when he gave the statement nor was he arrested after he made the statement. He was sober and in good physical health. During the interrogation, the mood between the appellant and Officer Mancuso was cordial.

The only real argument the appellant mounts is that he was under stress because his mother was terminally ill with cancer and Officer Mancuso told him that it would, therefore, be better for the interrogation to take place at the police station rather than at home in front of his parents. Even if this were an improper inducement (Judge Sanders did not find it to be such and neither do we),[1] its impact was only upon the forum for the interrogation and not upon the product of that interrogation.

The appellant's confession was not compelled. There was, therefore, no violation of his privilege against being compelled to be a witness against himself.

## TWO EXTRANEOUS ISSUES

While still arguing that his privilege against compelled self-incrimination was violated, the appellant mounts two sub-arguments, one of which is irrelevant and the other of which is immaterial.

Irrelevantly, the appellant claims that he was improperly induced to go to the police station for his May 16 arrest so that he would not be arrested in front of his family. Logically, nothing follows from that. Whatever the circumstances of his arrest may have been, they demon-

---

**1.** If it were otherwise, an intriguing question would arise. What would be the constitutional implications if, in terms of the forum for interrogation, it were determined that the State had cheated to obtain the "home field advantage" but had then, upon that home field, played the game itself scrupulously and honorably within the rules? There would appear to be none, because, absent any issue of physical restraint, there is no constitutional entitlement to being interrogated upon one's "home turf." Nor is there a general constitutional prohibition against police laziness, manipulativeness, deceit, etc. In terms of choice of forum for interrogation, therefore, the "home or away" question is a constitutional non-issue.

strably had no bearing on the voluntariness of his confession, because the arrest did not occur until eleven days after the confession was already a *fait accompli*.

■ Immaterially, the appellant claims that "his confession was a product of promises and inducements." He claims that several telephone calls to him by the police, encouraging him to come to the police station rather than be interrogated in front of his terminally ill mother, represented such improper inducements. Without suggesting for a moment that we see in this case anything remotely improper by way of promises or inducements, the short answer is that promises or inducements are not an issue when evaluating the Fifth Amendment privilege against compelled self-incrimination.

The Maryland common law dealing with confessions, something that has evolved over the course of more than a century, deals, to be sure, with improper affirmative stimuli such as rewards, promises, and inducements just as surely as it deals with the improper negative stimulus of coercion. The Fifth Amendment privilege, by contrast, deals only with the negative stimulus. Promises and inducements, of course, are the very opposite of coercion. Where the Maryland common law is concerned with the arguably improper use of both the carrot and the stick, the constitutional privilege is concerned only with the stick. Although we see nothing in this case that would offend *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979), we deliberately decline the appellant's invitation to address *Hillard* because it is immaterial. The appellant has framed his contention in terms of the Fifth Amendment privilege and *Hillard* explicitly eschews analysis under the Fifth Amendment:

"As is evident from our decision in this case, it is usually preferable to determine initially whether the activity complained of comports with the requirements of this State's nonconstitutional law, and then, only if the court finds that it so complies, does it become necessary to reach the issue of whether any constitutional stricture prohibits the conduct in question.

We in no way attempt in this case to evaluate whether federal or Maryland constitutional law establishes the same voluntariness test as that enunciated in this opinion. We rest our decision solely on Maryland nonconstitutional law because of the well-settled principle 'that courts should not decide constitutional issues unnecessarily.' *State v. Raithel*, 285 Md. 478, 484, 404 A.2d 264, 267 (1979). Whether United States and Maryland constitutional strictures are similar to each other or similar to our nonconstitutional requirements is irrelevant, since the activity complained of here does not satisfy the requirements of this State's nonconstitutional law."

286 Md. at 150, n. 1, 406 A.2d 415.

## THE BUSINESS RECORDS EXCEPTION

■ The appellant's second contention is that the State should not have been permitted to introduce into evidence the equipment request and log sheet of the telephone company without producing either the technician who administered the wiretap or the wiretap equipment itself. He acknowledges that the evidence came in under the business records exception to the hearsay rule as codified in Md. Cts. & Jud. Proc.Code Ann. § 10–101 (1984 Repl.Vol.), but argues that a satisfaction of the hearsay rule is not, *ipso facto*, a satisfaction of the confrontation clause.

He relies exclusively on *Moon v. State*, 300 Md. 354, 478 A.2d 695 (1984). In *Moon*, however, the Court of Appeals, while finding that the well-recognized hearsay exceptions satisfy the confrontation clause generally, found a confrontation violation in that case because of serious discrepancies on the face of the business record itself, manifesting "serious indicia of unreliability of the test." In *State v. Garlick*, 313 Md. 209, 545 A.2d 27 (1988), the Court of Appeals pointed out that *Moon* was the exception rather than the rule. In *Garlick*, the defendant objected to the admission of a hospital record without the testimony of the hospital technician as violating his right to confrontation. The Court of Appeals held there was no violation of confronta-

tion when dealing with what *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), called the "firmly rooted hearsay exception[s]." The Court of Appeals quoted with approval from *Snyder v. Massachusetts*, 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674, 679 (1934), wherein it had held:

> "[T]he privilege of confrontation [has not] at any time been without recognized exceptions, as for instance dying declarations or documentary evidence.... The exceptions are not even static, but may be enlarged from time to time if there is no material departure from the reason of the general rule."

The Court of Appeals went on to point out, at 313 Md. 215, 545 A.2d 27:

> "[T]here are certain types of evidence that are 'so intrinsically reliable that requiring production of the declarant may be difficult, if not pointless.' *Moon*, 300 Md. at 365, 478 A.2d at 701 (citing *e.g.*, business records, and *Dutton v. Evans*, 400 U.S. 74, 95–96, 91 S.Ct. 210, 223, 27 L.Ed.2d 213, 231 (1970) (Harlan, J., concurring) ('production would be unduly inconvenient and of small utility to a defendant')). Judge Cole pointed to circumstances
>
>> where the courts have found no confrontation violation because the evidence to be offered is clothed with substantial indicia of reliability. Such evidence is admitted without the declarant's testimony when producing the witness would likely prove unavailing or pointless. Business and hospital records fall within this category and generally the hearsay exception which allows their admission is expressed by statutory enactment.
>
> *Moon*, 300 Md. at 369, 478 A.2d at 702–703. (Footnote omitted)."

The satisfaction of the hearsay rule via the business records exception route in this case satisfied any requirement under the confrontation clause as well.

In the testimony of Catherine Bussey, moreover, the appellant had the benefit of the most expert testimony available with respect to the telephone tracing here in question. Ms. Bussey was with the Annoying Calls Bureau of the C & P Telephone Company and was the investigator in charge of this particular case. Ms. Bussey had been employed by the C & P Telephone Company for 25 years and had spent five years with the Annoying Calls Bureau.

She was able to describe for the jury how the telephone company ordinarily places a telephone trace and how the tracing mechanism works. It was Ms. Bussey who requested Marion Jones to keep a log of the dates and times of the harassing telephone calls. Ms. Bussey explained, moreover, that a telephone trace is performed by a computer. There is no technician of the type the appellant seeks. All that is required is that a telephone company employee key the request into the computer. Although Ms. Bussey can handle this function routinely, she did not key in the request in this case. The computer print-out that was sent directly to her, however, revealed indisputably that the correct number had been punched into the keyboard. The computer print-out revealed that it was Ms. Jones's telephone that was the vortex for the tracing in this case. Ms. Bussey was able to testify, under cross-examination, that she could personally attest that the equipment was in working order for if it had not been functioning properly, the computer could not have retrieved the information that it produced. Ms. Bussey testified further that the tracing equipment was that regularly and customarily used by the C & P Telephone Company and had been in use for some years.

It was Ms. Bussey's testimony, furthermore, that explained away the problem that gave the appellant apparent concern. The problem was that of why it took until April 17 for the trace to succeed. Ms. Bussey explained that Marion Jones's telephone is keyed to the Central Office for the Gaithersburg District. An incoming call can be traced to the telephone that makes the call if it is within that district. That was not the case here. When the call being

traced originates from another district, as here, the trace will simply reveal the origin of the call as another central office. In that event, a second trace must be initiated at that central office in order to obtain the actual telephone number of the caller. In this case, the calls coming into Marion Jones's telephone originated in the Northwood Central Office. It was only after several attempts that the full, two-step trace was "up" and on April 17 revealed the appellant's telephone as the source of the harassing calls.

In short, Catherine Bussey supplied every bit of information that was available to anyone on the mechanism of tracing generally and on this trace specifically. There was no error.

### APPROPRIATE SANCTIONS vs. WINDFALLS

■ The appellant's final contention is that Ms. Jones's telephone log and the equipment request and log sheet from the telephone company should have been suppressed because they were not discovered to the appellant pretrial. Assuming that they should have been discovered pretrial, the appellant yearns for a sanction which is excessive. The discovery law is not an obstacle course that will yield a defendant the windfall of exclusion every time the State fails to negotiate one of the hurdles. Its salutary purpose is to prevent a defendant from being surprised. Its intention is to give a defendant the necessary time to prepare a full and adequate defense.

In this case, the hand-written record or log of Marion Jones was received in evidence. Although seeking the windfall of exclusion, defense counsel acknowledged candidly that he did not "really question that the lady received these ... calls."

With respect to the equipment request and log sheet, Judge Sanders found that the appellant showed full familiarity with what the State was prepared to offer and evidenced no surprise at all. Defense counsel had, indeed, talked to Ms. Bussey and other employees of the telephone

company on a number of occasions. He indicated that he did not "deny what those records are going to say." Again, he simply sought the windfall of exclusion.

The appellant did not seek a continuance for further preparation for the obvious reason that he did not need one. The "question of whether any sanction is to be imposed for a discovery violation, and if so what sanction, is in the first instance committed to the discretion of the trial judge, and that the exercise of that discretion includes evaluating whether the violation prejudiced the defendant." *Evans v. State*, 304 Md. 487, 500, 499 A.2d 1261 (1985). We see no abuse of that discretion here.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.